OPINION OF THE COURT
Alexander, J.
In Patterson v Carey (41 NY2d 714), we held, inter alia, that Public Authorities Law § 153-c impermissibly infringed upon the State Comptroller’s discretionary power to supervise the *88 financial accounts of public authorities. On this appeal we conclude that, Public Authorities Law §2804 (2) and (3), a statute essentially similar in scope and intent to Public Authorities Law § 153-c, likewise impermissibly infringes upon the State Comptroller’s discretionary powers and therefore is invalid. Accordingly, we affirm the order of the Appellate Division.
I
Respondent New York State Thruway Authority (Authority) is a public corporation, created in 1950 to construct, improve, maintain and operate the New York State Thruway. The Authority has the power to issue bonds and to impose and collect tolls for the use of the Thruway. The last toll increase took effect in 1980 and had generated sufficient revenues to enable the Authority to meet all of its obligations. In 1987, however, the Authority realized that in order to continue to meet its obligations to all of its bondholders and to embark on a major 8Vi-year maintenance and rehabilitation program, it would have to increase revenues. After reviewing its financial condition, the Authority concluded that it would experience a revenue shortfall through 1996 of approximately $706 million if it did not impose a toll increase. Thus, the Authority determined that an increase in the amount of the tolls on the Thruway was warranted and instituted the statutory procedures necessary to accomplish the increase.
Although aware of the questionable constitutionality of Public Authorities Law § 2804 (1) and (2), the Authority submitted appropriate information about the proposed increase to the Comptroller for review and a public report. The Comptroller refused to examine the proposal, indicating that under Patterson v Carey (41 NY2d 714, supra) any proposed toll increase by a public corporation such as the Authority was not dependent upon Comptroller review and support. To ensure some independent review, the Authority retained a private auditor who reviewed the proposed increases and the underlying projections and concluded that the projections were reasonable. The required public hearings were held, but no Comptroller’s report was available for public examination. The Authority adopted the proposed toll increases effective April 17,1988.
Petitioners commenced this article 78 proceeding challenging the toll increase, contending that the increase was null *89 and void because it was adopted without the Comptroller’s participation as required by Public Authorities Law § 2804 (2) and (3). The Authority answered, asserting that the statute was unconstitutional under Patterson v Carey (supra) but that in any event, it had substantially complied with the statute’s audit and publication requirements. Supreme Court, without addressing the constitutionality of the statute, concluded that there had been substantial compliance with the statutory requirements and dismissed the petition. The Appellate Division, addressing the constitutional issue, unanimously affirmed stating, inter alia, that "Public Authorities Law § 2804 (2) and (3) unconstitutionally mandates that the Comptroller perform certain acts with regard to a proposed toll increase by a public corporation. The Comptroller’s refusal to perform these acts * * * was permissible and does not undermine the legality of the toll increase.” (155 AD2d 861, 862.)
Petitioners appealed to this Court as of right pursuant to CPLR 5601 (b) (2). We dismissed the appeal (75 NY2d 946), however, because no substantial constitutional question was directly involved. The constitutional issue presented had been resolved by our prior decision in Patterson concerning an essentially identical statute, and therefore, was insubstantial (see, Matter of David A. C., 43 NY2d 708; Tabankin v Codd, 40 NY2d 893; People ex rel. Uviller v Luger, 38 NY2d 854; see also, Cohen and Karger, Powers of the New York Court of Appeals § 55, at 254 [rev ed]). We subsequently granted leave to appeal, however, pursuant to CPLR 5602 (a) (1) (i).
II
In Patterson v Carey (41 NY2d 714, supra) we discussed the powers of the State Comptroller in regard to public corporations and political subdivisions. We noted that NY Constitution, article V, § 1 addresses the Comptroller’s constitutional jurisdiction with regard to the State and its political subdivisions and deems him the "independent auditing official for the affairs of the State.” (Id., at 723.) The Legislature is empowered to define the Comptroller’s "powers and duties” in respect to the State and its political subdivisions and to assign the Comptroller the supervision of accounts of political subdivisions.
In respect to public corporations, however, we noted that although article X, §5, which concerns public corporations, provides that every public corporation shall be subject to the *90 supervision of the Comptroller, the Comptroller’s authority to supervise the accounts of public corporations was entirely discretionary. In exercising this discretion, the Comptroller is to be guided by " 'his personal responsibility and commitment to his oath of office.’ ” (Id., at 724, quoting Sgaglione v Levitt, 37 NY2d 507, 512.) We observed further that the drafters of the New York Constitution took great care to withhold from the Legislature "the power to define the Comptroller’s powers and duties with respect to public corporations”, because they feared the Legislature might "interfere unduly with the independence of the Comptroller’s supervision.” (Id., at 724.)
In Patterson, following an announcement by the Jones Beach Parkway Authority of an increase in the tolls on the Southern State Parkway, the Legislature enacted Public Authorities Law § 153-c, which rescinded the toll increase, provided that the increase could not be restored and that no future increases could be imposed unless the authority complied with a new four-stage review process. Additionally, the authority was required, at least 120 days prior to the effective date of any proposed toll increase, to submit a detailed written report with economic analysis to the State Comptroller justifying the need for an increase. Significantly, the statute also required the Comptroller to " 'review any proposed increase or imposition in tolls’ ” and " 'within sixty days make public his findings, conclusions and recommendations. ’ ” (Id., at 719.) We declared Public Authorities Law § 153-c invalid because, inter alia, it "purport[ed] to mandate that the Comptroller exercise his supervision over a particular topic in a particular manner” and "impose[d] upon the Comptroller the power and duty to conduct a study and review not merely of accounts but of a subject of administrative and operational concern in the management of the authority’s business.” (Id., at 724.)
Public Authorities Law § 2804 (2) and (3) has requirements similar to those in Public Authorities Law § 153-c that purport to "define the Comptroller’s powers and duties with respect to public corporations.” Specifically, subdivisions (2) and (3) provide:
"(2) The comptroller shall review any proposed increase or imposition in fees, tolls or other charges * * * and within sixty days make public a report of his findings, conclusions and recommendations * * *
"(3) Every authority or commission shall hold a public hearing or hearings after receipt of the report of the comptrol *91 ler * * * not less than fifteen days prior to the effective date of such increase or imposition. * * * Following such public hearing or hearings, the authority or commission shall reconsider the proposed increase or imposition and may rescind, change or modify the proposal as it then deems necessary or advisable.” (Emphasis added.)
Thus, this statute, by requiring the Comptroller to review reports submitted by an authority, to utilize his resources to analyze the report and to recommend whether the proposed increase in fees, tolls or charges should take effect, impermissibly interferes with the exercise of the Comptroller’s discretion in respect to a public corporation just as did Public Authorities Law § 153-c. That there are some differences between the two statutes, e.g., Public Authorities Law § 2804 (2) and (3) does not authorize the Legislature to rescind a toll increase, is of no consequence. What is relevant is that Public Authorities Law § 2804 (2) and (3), like section 153-c, interferes with the Comptroller’s discretion. Indeed, the statute is even more intrusive because subdivision (1) requires the Comptroller to exercise a supervisory role in respect to all authorities "having jurisdiction over highway, bridge or tunnel facilities” and requires the authorities to submit a detailed report supporting any proposed increase in fees, tolls or other charges to the Comptroller at least 120 days prior to the time the change is to take place.
Petitioners concede that the Thruway Authority is a public corporation as defined in Public Authorities Law § 352, but contend that Patterson is not controlling here because the Thruway Authority is not an "ordinary public authority” over which the Comptroller has discretionary powers; rather, they argue, unlike other public corporations, the Comptroller is significantly involved with the financial affairs of the Thruway Authority since the Comptroller already has custody and control over all the funds of the Thruway Authority and the State guarantees some of the Authority’s bonds. They contend, therefore, that the Authority’s funds are "money under the control of the State,” in respect to which the Legislature is empowered to assign supervisory powers and duties to the Comptroller pursuant to article V, § 1 of the New York State Constitution. In support of these contentions, petitioners rely on Public Authorities Law §§ 364 and 366 (3). These statutes, however, are markedly different in purpose and effect from Public Authorities Law §2804 (2) and (3) and thus do not support petitioners’ argument.
*92 Although the Comptroller has custody of the Thruway Authority’s funds, it is the Authority, not the Comptroller, which controls these funds. The Comptroller’s role is limited merely to serving as the Authority’s fiscal agent pursuant to Public Authorities Law § 364. This section provides that "[a]ll moneys of the authority from whatever source derived shall be paid to the comptroller as agent of the authority, who shall not commingle such moneys with any other moneys.” Public Authorities Law § 364 also grants the Comptroller the power to examine the accounts and books of the Authority and authorizes the Comptroller to invest the funds of the Authority in government bonds. He may do so only when the Authority does not require funds for immediate use, however, and only at the discretion of the Authority. In fact, the Comptroller is not given the power to disperse the Authority’s funds or use them in any manner without the Authority’s consent. Thus, notwithstanding the Comptroller’s limited authority to receive and hold the Authority’s funds and to examine its books and accounts, it cannot be said that these circumstances render the funds of the Authority "money under the control of the State.”
Indeed, among the many powers Public Authorities Law § 354 gives the Authority are the power to sue and be sued, to acquire, hold and dispose of personal property, to make contracts, to borrow money and issue bonds and to fix and collect fees, rentals and charges for the use of the Thruway to produce sufficient revenue to meet the maintenance and operation costs of the Thruway — all powers relating and pertinent to the acquisition, use and control of the Authority’s funds. It is these powers granted to the Authority which demonstrate control over the Authority’s moneys, not the limited role in which the Comptroller is cast as the Authority’s agent.
Petitioners’ contention that because New York State guarantees bonds of the Thruway Authority the Authority’s funds constitute "money under the control of the State,” thereby empowering the Legislature to assign the Comptroller supervision of the Thruway Authority’s funds, is equally without merit.
In support of this argument, petitioners cite article X, § 6 of the Constitution authorizing the Legislature to "make or authorize making the state liable for the payment of the principal of and interest on bonds of a public corporation created to construct state thruways, in a principal amount not *93 to exceed five hundred million dollars” and article V, § 1 providing: "The payment of any money of the state, or of any money under its control, or the refund of any money paid to the state, except upon audit by the comptroller, shall be void * * * In such respect the legislature shall define his powers and duties”.
They argue that, when considered in connection with Public Authorities Law § 366 which provides for State guarantee of bonds issued by the Authority and for the Comptroller to pay the principal and interest thereon in the event of the Authority’s default, these constitutional provisions clearly render funds of the Authority "money under the control of the State.” In addition, petitioners contend that while the Authority is authorized to issue nonguaranteed bonds which have priority over guaranteed bonds, it may do so only upon the consent of the Comptroller and upon the determination by the Authority that it will have adequate means to meet its obligations upon the outstanding guaranteed bonds (see, Public Authorities Law § 366 [3]).
That New York State guarantees bonds of the Thruway Authority and that the Authority’s power to issue nonguaranteed bonds is limited does not transform the Authority’s funds into "money under control of the State.” In Matter of Smith v Levitt (37 AD2d 418 [Simons, J., participating], affd 30 NY2d 934), the Appellate Division specifically addressed the issue of whether the money to finance a project of the State Urban Development Corporation, a public benefit corporation (see, L 1968, ch 174), received from the sale of bonds guaranteed by the State, constituted money of the State or money under the State’s control so as to require an audit by the Comptroller. The court discussed the genesis and purpose of article V, § 1 and the enabling legislation creating the Urban Development Corporation. It determined that payments the corporation received from the sale of bonds and notes were not money of the State or money under its control even though "the bonds of UDC might be classified as contingent liabilities on the part of the State of New York.” (Id., at 421.) Thus, here, as in Levitt, the fact of the State’s guarantee of the Authority’s bonds which might classify the bonds as "contingent liabilities on the part of the State,” does not transform the Authority’s funds into money under the State’s control.
Finally, that the State has a "major concern” in the Authority’s business because it guarantees some of the Authority’s *94 bonds, cannot, as petitioners would have it, serve to justify the impermissible interference by the Legislature with the Comptroller’s discretion to supervise the accounts of public authorities.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.