86 F.3d 289
 42 ERC 1961
 Frank MANCUSO; Ellen Mancuso, individually and on behalf of
their children, Deanna and Theresa Mancuso; and
F. Mancuso Boat Yard, Inc., doing
business as Echo Bay Marina,
Plaintiffs-Appellees,
v.
NEW YORK STATE THRUWAY AUTHORITY, Defendant-Appellant,
The City of New Rochelle, Defendant.
 No. 524, Docket 95-7443.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 16, 1995.
Decided June 13, 1996.
 
 John A. Tartaglia, White Plains, NY, for Plaintiffs-Appellees.
 John J. Sipos, New York City (Dennis C. Vacco, Attorney General of the State of New York, John H. Carley, Gordon J. Johnson, Elizabeth A. Grisaru, New York City, on the brief), for Defendant-Appellant.
 Before OAKES, MAHONEY, and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 This appeal raises the question of whether defendant New York State Thruway Authority (the "Thruway Authority") is immune from suit in federal court under the Eleventh Amendment. The district court, in a memorandum and order, held that the Thruway Authority was not immune and denied its motion for summary judgment. See Mancuso v. New York State Thruway Auth., 909 F.Supp. 133 (S.D.N.Y.1995). The Thruway Authority now appeals, arguing that it is entitled to Eleventh Amendment immunity under the "arm-of-the-state" doctrine. The Thruway Authority also raises several arguments based on state law, including a defense that the plaintiffs' state law causes of action are barred by New York principles of sovereign immunity.
 
 BACKGROUND
 
 2
 This dispute arises out of the Thruway Authority's ownership and use of the North Avenue Drain, a storm sewer that empties into Echo Bay in New Rochelle, New York. The plaintiffs (the "Mancusos") brought this action against the Thruway Authority and the City of New Rochelle, alleging that the defendants have violated the Clean Water Act, 33 U.S.C. § 1251 et seq., by discharging pollutants into Echo Bay through the North Avenue Drain. In addition, the plaintiffs asserted state-law causes of action for gross negligence, nuisance, strict liability, trespass and battery.
 
 
 3
 In May 1994, the defendants moved for summary judgment. The Thruway Authority argued that it was entitled to Eleventh Amendment immunity under the arm-of-the-state doctrine. The Thruway Authority and the City of New Rochelle both also contended that any discharge from the North Avenue Drain had been exempted from the Clean Water Act's permit requirements and that the district court lacked subject matter jurisdiction over the Mancusos' claims. The district court denied both motions.
 
 
 4
 On appeal, the Thruway Authority urges its Eleventh Amendment immunity defense. In addition, the Thruway Authority argues that it is entitled to sovereign immunity because the plaintiffs failed to give proper notice of this suit to the New York Attorney General. We affirm the district court's rejection of the Eleventh Amendment and state sovereign immunity arguments. The Thruway Authority also raises several other defenses or limitations as to the Mancusos' state law causes of action, which are not reviewable at this stage of the litigation.
 
 DISCUSSION
 I. Appellate Subject Matter Jurisdiction
 
 5
 A federal court of appeals generally only has jurisdiction to hear appeals from those "final decisions of the district courts" that terminate an action. 28 U.S.C. § 1291. In some cases, however, the courts of appeals may hear appeals prior to the termination of an action. See, e.g., 28 U.S.C. § 1292. The Supreme Court, in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949), clarified that the courts of appeals also have jurisdiction under § 1291 to hear appeals from that small class of district court orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."
 
 
 6
 The district court's memorandum and order is not a final decision that terminates the plaintiffs' action against the defendants, Cohen, 337 U.S. at 545-46, 69 S.Ct. at 1225-26, nor are we granted jurisdiction to hear an appeal from that order under any of the statutory exceptions, see 28 U.S.C. § 1292. Nonetheless, we have jurisdiction to hear an immediate appeal from the portion of the district court's order that denies the Thruway Authority's Eleventh Amendment claim of immunity because it falls squarely within Cohen 's collateral order exception. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S.Ct. 684, 687, 121 L.Ed.2d 605 (1993); Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities, 64 F.3d 810, 815 (2d Cir.1995).
 
 
 7
 Furthermore, we also have jurisdiction to hear the Thruway Authority's argument that it is immune from the state law causes of action under New York law. In Napolitano v. Flynn, 949 F.2d 617, 621 (2d Cir.1991), we held that we had jurisdiction to hear the appeal of several police officers who contended that they were immune from the plaintiff's state law causes of action under the Vermont law doctrine of qualified immunity. We reasoned that because the state law claim of qualified immunity, like its federal counterpart, was not "simply a defense to substantive liability," but was "an immunity from suit," it fell within the Cohen exception. Id. Here, the Thruway Authority argues that the Mancusos may not sue it because they failed to serve a copy of the complaint on the New York Attorney General, as required by § 11(a) of the New York Court of Claims Act. We find that we have jurisdiction to hear this argument because it is both "separate from the merits of the plaintiff[s'] action" and, if meritorious, would entitle the Thruway Authority not to be subject to suit. Napolitano, 949 F.2d at 621; see Finnerty v. New York State Thruway Auth., 75 N.Y.2d 721, 722-23, 551 N.Y.S.2d 188, 550 N.E.2d 441 (1989); see also Blue v. Koren, 72 F.3d 1075, 1080 n. 1 (2d Cir.1995) (order denying qualified immunity defense as a matter of law immediately appealable); Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir.1995) (same); Hill v. City of New York, 45 F.3d 653, 659-60 (2d Cir.1995) (same).
 
 
 8
 We do not have jurisdiction, however, over the Thruway Authority's other defenses or limitations under state law to the Mancusos' action that (1) the Thruway Authority cannot be liable for punitive damages, (2) it may not be subject to an injunction, and (3) it cannot be subject to trial by jury. Although these arguments may be separate from the merits of this action, the district court's failure to grant the Thruway Authority's motion for summary judgment on any of these grounds is not a decision that is "effectively unreviewable if an appeal has to await a final judgment." Napolitano, 949 F.2d at 621. If the district court fails to uphold these defenses in favor of the Thruway Authority and is in error in doing so, the district court's decision is eminently reviewable: we will be able to order a bench trial or to strike that part of a judgment ordering an injunction or awarding punitive damages. If review occurs in the normal course, no unremediable harm will befall the Thruway Authority. Accordingly, we do not have jurisdiction to adjudicate these defenses under the collateral order doctrine.
 
 
 9
 The Thruway Authority contends that we still may reach these issues under the doctrine of pendent appellate jurisdiction. The Supreme Court, however, has recently made clear that pendent appellate jurisdiction should be exercised sparingly, if ever, by the courts of appeals. In Swint v. Chambers County Commission, --- U.S. ----, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the plaintiff brought suit against a county under 42 U.S.C. § 1983 and the county sought summary judgment on the ground that none of the individuals involved was a policy maker and hence the county was not liable under Monell v. New York City Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The district court denied the county's motion, but the Eleventh Circuit, exercising pendent appellate jurisdiction, reversed. The Supreme Court vacated the Eleventh Circuit's decision on the ground that the court of appeals lacked jurisdiction over the county's claim. Swint, --- U.S. at ---- - ----, 115 S.Ct. at 1208-12. Although the Court refused to decide when, if ever, pendent appellate jurisdiction is appropriate, it did state that there was no jurisdiction in Swint because the county's claim was not "inextricably intertwined" with the other issues, nor was it "necessary to ensure meaningful review" of those issues. Id. at ----, 115 S.Ct. at 1212. In this case, the Thruway Authority's additional state law defenses are neither inextricably intertwined with, nor necessary to the resolution of, its immunity claims. Therefore, we refuse to exercise pendent appellate jurisdiction over those issues.
 
 II. Eleventh Amendment
 
 10
 The Eleventh Amendment to the Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the text of the amendment speaks only of suits against a state by persons who are not citizens of that state, the Supreme Court has interpreted the Eleventh Amendment to extend to suits by all persons against a state in federal court. Thus, in Hans v. Louisiana, 134 U.S. 1, 10-11, 10 S.Ct. 504, 505-06, 33 L.Ed. 842 (1890), the Court rejected the idea that the Eleventh Amendment allowed states, without their consent, to be sued by their own citizens in federal court. The Court noted that such a reading of the Eleventh Amendment would create an "anomalous result" that would be "no less startling and unexpected" than the Court's decision in Chisholm v. Georgia, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), the case that led to the adoption of the Eleventh Amendment. Hans, 134 U.S. at 10-11, 10 S.Ct. at 505-06.
 
 
 11
 Of course, the Mancusos have not brought suit against the State of New York, but instead against the Thruway Authority, which was created by the state for the purpose of constructing and operating a high-speed, limited-access thruway spanning the state. The Mancusos' decision to sue the Thruway Authority and not the state is not the end of our Eleventh Amendment inquiry, but simply the beginning, for that amendment also bars some suits where "a State is not named a party to the action." Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Although the Eleventh Amendment does not apply to suits against counties, municipal corporations, and other political subdivisions, the Thruway Authority is entitled to immunity if it can demonstrate that it is more like "an arm of the State," such as a state agency, than like "a municipal corporation or other political subdivision." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).
 
 
 12
 The jurisprudence over how to apply the arm-of-the-state doctrine is, at best, confused. In Feeney v. Port Authority Trans-Hudson Corporation, 873 F.2d 628, 630-31 (2d Cir.1989), aff'd on other grounds, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990), we considered six factors, derived from the Supreme Court's decision in Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), in deciding whether the Port Authority of New York and New Jersey (the "Port Authority"), a bistate entity created by an interstate compact between those two states, was covered by the Eleventh Amendment: (1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state.
 
 
 13
 The Supreme Court again addressed the immunity of bistate entities under the arm-of-the-state doctrine in Hess v. Port Authority Trans-Hudson Corporation, --- U.S. ----, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).[1] Justice Ginsburg, writing for the Court, began by distinguishing bistate from other state-created entities because "the integrity of the compacting States [is not] compromised when the Compact Clause entity is sued in federal court." Id. at ----, 115 S.Ct. at 401. The Court then discussed the factors that it had examined in Lake Country, but found that those factors did not "all point the same way." Id. at ----, 115 S.Ct. at 402. Under these circumstances, the Court indicated that the Eleventh Amendment's twin rationales--protecting the state's fisc and dignity--"remain our prime guide." Id. at ----, 115 S.Ct. at 404. The Court rejected the Port Authority's and the dissent's argument that the Eleventh Amendment inquiry should be determined only by looking at the degree of control that New York and New Jersey wielded over the Port Authority. Id.; see also id. at ----, 115 S.Ct. at 411 (O'Connor, J., dissenting). Instead, the Court found that the Eleventh Amendment's central concern was protecting state treasuries and that, under the facts of Hess, the proper inquiry was "[i]f the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise?" Id. at ----, 115 S.Ct. at 406.
 
 
 14
 Although Hess involved a bistate entity, we nevertheless believe that it is the proper starting place for our Eleventh Amendment inquiry in this case. See Gray v. Laws, 51 F.3d 426, 431 (4th Cir.1995) ("[E]ssentially the same broad principles identified by the Court as relevant in the multistate entity context apply also in determining whether, within a single state, a governmental entity is 'state' or 'local' for purposes of the Eleventh Amendment."). Thus, following the Supreme Court's lead, we first look to the six Lake Country factors identified in Feeney. Only if those factors point in different directions do we then turn to the next questions: (a) will allowing the entity to be sued in federal court threaten the integrity of the state? and (b) does it expose the state treasury to risk? We remain mindful of the Supreme Court's emphasis that "the vulnerability of the State's purse [is] the most salient factor." Hess, --- U.S. at ----, 115 S.Ct. at 404. If all the elements are evenly balanced, this concern will control.
 
 
 15
 In this case, we find the six Feeney factors to be evenly balanced. Turning to the first factor, we note that the New York Legislature, in creating the Thruway Authority, never referred to it as a "political subdivision." Cf. Lake Country, 440 U.S. at 401, 99 S.Ct. at 1177 (bistate entity referred to in its compact as a "political subdivision"). The New York Legislature, however, declared that the Thruway Authority is "a body corporate and politic constituting a public corporation." N.Y.Pub.Auth.L. § 352(1). Thus, we look to how the New York Legislature and the New York courts have interpreted that term.
 
 
 16
 The Legislature has used the phrase "body corporate and politic" to refer to a wide variety of entities, some of which we are certain would not be found to be arms of the state. See, e.g., N.Y.Pub.Auth.L. § 1120-c (Town of Clifton Park Water Authority); id. § 1470-b (City of Rome Parking Authority); id. § 1493-c (Albany Parking Authority). On the other hand, the term has also been used to refer to entities whose status under the Eleventh Amendment is far less certain. See, e.g., id. § 1263(1)(a) (Metropolitan Transportation Authority); id. § 1677 (Dormitory Authority). This phrase does little to advance our inquiry.
 
 
 17
 The phrase "public corporation" is similarly unhelpful. Under New York law, a public corporation must be either a "municipal corporation," a "district corporation," or a "public benefit corporation." N.Y.Gen.Constr.L. § 65(b). The Thruway Authority does not seem to fit within the definition of either a municipal corporation, defined to include "a county, city, town, village and school district," N.Y.Gen.Constr.L. § 66(2), or a district corporation, defined as including "any territorial division of the state ... whether or not such territorial division is expressly declared to be a body corporate and politic," id. § 66(3). Moreover, when the state legislature has meant to create a "public benefit corporation," it has usually done so in explicit terms. See, e.g., N.Y.Pub.Auth.L. §§ 1120-c, 1470-b, 1493-c. Therefore, we are unable to discern what the legislature meant by using the phrase "public corporation" to describe the Thruway Authority.
 
 
 18
 New York state decisional law is also inconclusive in determining the formal status of the Thruway Authority. The Court of Appeals, in Easley v. New York State Thruway Authority, 1 N.Y.2d 374, 376, 153 N.Y.S.2d 28, 135 N.E.2d 572 (1956), stated that the Thruway Authority "is an arm or agency of the State." Three years later, the Court of Appeals was more equivocal, noting that "[a]lthough created by the State ... [the Thruway Authority is] independent and autonomous, deliberately designed to be able to function with a freedom and flexibility not permitted to an ordinary State board, department or commission" and that "there is a close relationship between the Thruway Authority and the State." Plumbing, Heating, Piping & Air Conditioning Contractors Ass'n v. New York State Thruway Auth., 5 N.Y.2d 420, 423, 424, 185 N.Y.S.2d 534, 158 N.E.2d 238 (1959). The Appellate Division, in Mac Farland-Breakell Building Corporation v. New York State Thruway Authority, 104 A.D.2d 139, 141, 484 N.Y.S.2d 166 (3d Dep't 1984), distinguished Easley on the ground that the Court of Appeals had not used the term "agency" as a term of art, but was "merely holding that [the Thruway Authority] performed a State function to a sufficient degree to permit the Legislature to constitutionally confer jurisdiction on the Court of Claims" over actions brought against the Thruway Authority. The Appellate Division concluded that because the Thruway Authority is a "quasi-governmental bod[y] which [was] created as [an] entit[y] separate from the State," it is not a "State agency" as that phrase is used in New York State Finance Law § 145. Id.; see also Bird v. New York State Thruway Auth., 8 A.D.2d 495, 496-97, 188 N.Y.S.2d 788 (4th Dep't 1959) (Thruway Authority is a public corporation and therefore not an integral part of state government).
 
 
 19
 Court of Appeals cases after Easley strengthen the argument that the Thruway Authority, as a public corporation or authority, is independent of the state. See, e.g., Schulz v. State, 84 N.Y.2d 231, 246, 616 N.Y.S.2d 343, 639 N.E.2d 1140 (1994) ("[T]here can be no question that--for the purposes of contracting [its] own legally binding obligations--the Thruway Authority [is a] public corporation[ ] existing independently of the state."), cert. denied, --- U.S. ----, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995); Collins v. Manhattan & Bronx Surface Transit Operating Auth., 62 N.Y.2d 361, 368, 477 N.Y.S.2d 91, 465 N.E.2d 811 (1984) ("[P]ublic authorities [are] intended 'to resemble in many respects a private business corporation.' " (quoting 11 Report of Constitutional Convention Committee, 1938, p. 238)). However, these cases do not mention Easley, much less overrule it. Thus, taken as a whole, New York caselaw neither plainly considers the Thruway Authority a traditional state agency nor treats it as a completely independent corporation. Because the Legislature has accorded the Thruway Authority some traditional state powers, such as immunity from taxes, N.Y.Pub.Auth.L. § 371, and the ability to acquire property by eminent domain, id. § 358, we think that the first Feeney factor tips slightly in favor of Eleventh Amendment immunity. Cf. Hess, --- U.S. at ----, 115 S.Ct. at 403 (Port Authority not labelled as a state agency but state courts have treated it as an agency and not a municipal unit or local district).
 
 
 20
 The second Feeney factor requires us to determine who appoints the Thruway Authority's members. This factor is easier to apply than the first, and it favors a finding of immunity: all three board members are appointed by the Governor of New York with the advice and consent of the state Senate. N.Y.Pub.Auth.L. § 352(1).
 
 
 21
 The next factor, how the Thruway Authority is funded, weighs against immunity. No provision of New York law requires the state to fund the Thruway Authority's operations and the Thruway Authority points to only two categories of evidence to support its claim that it is not self-funded: the state legislature's decision at the time of the Thruway Authority's creation to guarantee its initial bond offering, and several instances in which New York has allocated funds to the Thruway Authority. However, the arm-of-the-state doctrine focuses not on initial funding, but on current funding. See Ristow v. South Carolina Ports Auth., 58 F.3d 1051, 1053 (4th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 514, 133 L.Ed.2d 423 (1995). As far as we are aware, those initial bonds have long since been retired, and the state has not guaranteed any other offerings. Furthermore, each instance in which the state has allocated funds to the Thruway Authority has involved an isolated project that the Thruway Authority took on at the behest of the state. Indeed, the limited nature of these instances of state funding establish that in general the Thruway Authority is self-funded.
 
 
 22
 The fourth factor, whether the entity's function is traditionally one of state or local government, weighs in favor of immunity. Although the construction and operation of roads and bridges may be viewed as either a state or local function, see Hess, --- U.S. at ----, 115 S.Ct. at 403, the thruway stretches across the entire state and, therefore, the Thruway Authority performs a function that a state would normally provide. The Thruway Authority also operates New York's canal system, which is a state, not a local, function.
 
 
 23
 The fifth Feeney factor considers whether New York State has a veto power over the Thruway Authority's actions. We have already noted, in our consideration of the second factor, that the Governor appoints and the Legislature confirms the three members of the Thruway Authority. The members are appointed for nine year terms, N.Y.Pub.Auth.L. § 352(1), and, once appointed, their actions are essentially unreviewable either by other state officers or by the Legislature. Unlike the states' relationship to the Port Authority as described in Hess, New York has no veto power over the Thruway Authority's actions. The Thruway Authority's only obligation to the state is to submit to the Governor, the Legislature, and several other state officials an annual report outlining its operations and fiscal condition. See N.Y.Pub.Auth.L. § 363. And, unlike the situation with the Port Authority, the parties have not pointed to any provision of New York law, and we are aware of none, that would allow either the Governor or the Legislature to remove the Thruway Authority's members prior to the expiration of their terms. See Hess, --- U.S. at ----, 115 S.Ct. at 399.
 
 
 24
 The Thruway Authority contends that the fifth factor weighs in favor of immunity because under New York law the Thruway Authority is required to deposit all its receipts with the state Comptroller and may only issue bonds with the Comptroller's permission. N.Y.Pub.Auth.L. §§ 364, 365. The Court of Appeals has held, however, that the monies deposited with the Comptroller are not under the state's control, see New York Pub. Interest Research Group, Inc. v. New York State Thruway Auth., 77 N.Y.2d 86, 92, 564 N.Y.S.2d 708, 565 N.E.2d 1259 (1990) ("NYPIRG "), and we are aware of no provision that allows the Comptroller to refuse to pay any of the Thruway Authority's debts. The New York Constitution expressly provides that the Comptroller may review the accounts of all public corporations. N.Y.Const. art. X, § 5. This power is entirely discretionary and the Comptroller has no duty to supervise any public corporation. NYPIRG, 77 N.Y.2d at 90-91, 564 N.Y.S.2d 708, 565 N.E.2d 1259. Similarly, we do not think that state control is evidenced by the Comptroller's responsibility to ensure fiscal responsibility by the Thruway Authority before it issues debt instruments. Accordingly, we find that the fifth Feeney factor weighs against finding that the Thruway Authority is covered by the Eleventh Amendment.
 
 
 25
 The final factor, whether a judgment against the Thruway Authority will place the state treasury at risk, also weighs against finding immunity. As we noted above, New York law expressly provides that "[t]he state shall be liable on notes or bonds guaranteed hereunder but shall not be liable on notes or bonds not guaranteed by the state which shall not be a debt of the state." N.Y.Pub.Auth.L. § 369. The New York Constitution limits such guarantees to the initial construction of the thruway, see N.Y.Const. art. X, § 6(a), and expressly provides that the state shall not be liable for the obligations of public corporations, such as the Thruway Authority, see id. art. X, § 5. Thus, there can be no doubt that the state is not legally obligated to pay for the Thruway Authority's debts. See Schulz, 84 N.Y.2d at 247, 616 N.Y.S.2d 343, 639 N.E.2d 1140.
 
 
 26
 But our inquiry as to the sixth Feeney factor does not end simply because New York is not legally required to pay the Thruway Authority's debts; we must also ask whether a judgment against the Thruway Authority would have the practical effect of requiring payments from New York. See Ristow, 58 F.3d at 1053. The Thruway Authority has provided no evidence that it would have any difficulty in satisfying a judgment in this case, or in any other. Instead, the Thruway Authority simply speculates that if the plaintiffs were to receive all the damages they claim ($105 million), its financial stability would be threatened. But this differs little from the Port Authority's unsubstantiated claim in Hess that a judgment against it would adversely impact the treasuries of New York and New Jersey. --- U.S. at ----, 115 S.Ct. at 405. The reality is that the Thruway Authority is "structured, [like] the Port Authority is, to be self-sustaining." Id. Thus, we have no difficulty in concluding that any judgment against the Thruway Authority in this case poses no threat to the finances of New York.
 
 
 27
 With the six Feeney factors in equipoise, we turn to the two purposes underlying the Eleventh Amendment--protection against state liability and respect for state sovereignty. In this case, the state treasury is not even minimally at risk and the sole question remaining is whether suit in federal court will be an affront to the dignity of New York State. See Hess, --- U.S. at ----, 115 S.Ct. at 401. We believe that the state sovereignty concern weighs neither in favor nor against Eleventh Amendment immunity. New York law itself provides the same kind of immunity to the Thruway Authority that it accords to the state, subjecting it only to certain tort and breach of contract claims, all of which must be brought in the Court of Claims. See N.Y.Pub.Auth.L. § 361-b. Allowing the Thruway Authority to be sued in federal court arguably would interfere with this carefully limited scheme for liability that New York has created. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 & n. 9, 104 S.Ct. 900, 907 & n. 9, 79 L.Ed.2d 67 (1984). The Thruway Authority, however, is not a traditional state agency, but a public entity that is generally self-funded and, except for the appointment of its members to nine-year terms, it is not under significant state control. Although the Thruway Authority may be identified closely with the state, New York State has given the Thruway Authority an existence quite independent from the state and exercises the most minimal control over the Thruway Authority. We are unable to conclude that subjecting the Thruway Authority to suit in federal court would be an affront to the dignity of New York. Because the concern for state liability weighs against a finding of immunity and because the concerns of state sovereignty and dignity are not fully implicated, we hold that the Thruway Authority is not entitled to Eleventh Amendment immunity.
 
 
 28
 Our conclusion that the Thruway Authority is not granted Eleventh Amendment immunity from suit in federal court accords with the Third Circuit's view in Christy v. Pennsylvania Turnpike Commission, 54 F.3d 1140 (3d Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995), that the Pennsylvania Turnpike Commission ("PTC") is similarly not protected by the Eleventh Amendment. There are some minor differences between the PTC and the Thruway Authority, the most significant of which is that, while the PTC did not enjoy sovereign immunity under state law, id. at 1148, the Thruway Authority does, Easley, 1 N.Y.2d at 376, 153 N.Y.S.2d 28, 135 N.E.2d 572. This difference cuts in favor of finding immunity for the Thruway Authority. On the other hand, the Pennsylvania Secretary of Transportation is also automatically a member of the PTC's board, Christy, 54 F.3d at 1149, which is not the case in New York. On the whole, we do not think that these minor differences between the PTC and the Thruway Authority create any practical distinction in their status under the Eleventh Amendment. Accordingly, we affirm that part of the district court's order that denied the Thruway Authority's motion to dismiss based on Eleventh Amendment immunity.
 
 III. State Immunity
 
 29
 The Thruway Authority repeats on appeal its argument that the Mancusos' state law claims must be dismissed because they failed to serve both their notice of claim letters and their complaint on the Attorney General. As the Thruway Authority notes, § 11(a) of the Court of Claims Act requires:
 
 
 30
 The claim shall be filed with the clerk of the court; and, except in the case of a claim for the appropriation by the state of lands, a copy shall be served personally or by certified mail, return receipt requested, upon the attorney general within the times hereinbefore provided for filing with the clerk of the court.... Service by certified mail, return receipt requested, upon the attorney general shall not be complete until the claim or notice of intention is received in the office of the attorney general. Personal service upon the attorney general shall be made in the same manner as described in section of the civil practice law and rules.
 
 
 31
 N.Y.Ct.Cl. Act § 11(a). Failure to abide by these requirements divests the Court of Claims of subject matter jurisdiction, and presumably also divests us of such jurisdiction. See Finnerty, 75 N.Y.2d at 723, 551 N.Y.S.2d 188, 550 N.E.2d 441. However, § 11(c) of the Court of Claims Act provides:
 
 
 32
 Any objection or defense based upon failure to comply with (i) the time limitations contained in section ten of this act, or (ii) the manner of service requirements set forth in subdivision a of this section is waived unless raised, with particularity, either by a motion to dismiss made before service of the responsive pleading is required or in the responsive pleading, and if so waived the court shall not dismiss the claim for such failure.
 
 
 33
 N.Y.Ct.Cl. Act § 11(c). We read this section as requiring the Thruway Authority to assert, either before or in its responsive pleading, any defense based on a plaintiff's failure to serve the Attorney General. Because the Thruway Authority's answer did not assert a defense based on § 11(a), that defense has been waived. Accordingly, we affirm the district court on this issue as well.
 
 CONCLUSION
 
 34
 For the reasons stated above, we affirm the district court's rejection of Eleventh Amendment immunity and state law immunity to the Thruway Authority and we do not decide the Thruway Authority's other defenses, which are beyond our jurisdiction.
 
 
 
 [1]
 The parties' suggestions to the contrary notwithstanding, the Supreme Court's decision in Seminole Tribe v. Florida, --- U.S. ----, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), does not alter our analysis here