[672 NYS2d 442]

In the Matter of TOWN OF FISHKILL et al., Appellants, v ROYAL
DUTCHESS PROPERTIES, INC., et al., Respondents.

Third Department, April 30, 1998

## APPEARANCES OF COUNSEL

*Van DeWater & Van DeWater,* Poughkeepsie (*David D. Hagstrom* of counsel), for appellants.

*Plunkett & Jaffee, P. C.,* Albany (*Patrick E. Brown* of counsel), for respondents.

## OPINION OF THE COURT

YESAWICH JR., J.

In 1984 respondent Comptroller, in his capacity as trustee of the Common Retirement Fund of the State of New York (hereinafter CRF)—a trust fund holding the bulk of the assets of the New York State and Local Employees' Retirement System and the New York State and Local Police and Fire Retirement System (*see,* Retirement and Social Security Law § 422)—extended a $15 million loan of fund assets to the owner of a shopping mall in the Town of Fishkill, Dutchess County. The loan was secured by a mortgage on the mall property. When the owner subsequently defaulted on the loan, settlement of the ensuing foreclosure proceedings resulted in respondent Royal Dutchess Properties, Inc. acquiring the property by deed in lieu of foreclosure. Royal, a Delaware corporation authorized to do business in New York, was formed for the sole purpose of acquiring and holding title to real property and remitting the income from that property "to one or more organizations described in Section 501 (c) (25) (C) of the Internal Revenue Code of 1986, as amended [including any agency or instrumentality of a State], which are shareholders of [Royal]" (*see,* 26 USC § 501 [c] [25] [C]). Royal's sole shareholder is the Comptroller, in his capacity as trustee of the CRF.

This dispute centers on whether the mall property—since sold to an unrelated private entity—was exempt from local property taxes while it was owned by Royal. In reliance upon, *inter alia,* an opinion issued by the State Office of Real Property Services (hereinafter ORPS), respondents repeatedly asked that the property be removed from the local tax assessment rolls in 1994 on the ground that it was then owned by the State or a State agency (*see,* RPTL 404 [1]). Petitioners, the Town and its assessor, refused to accede to this request, asserting that inasmuch as the property was owned by a private corporation, legally distinct from the State, the retirement

systems and the CRF, it was not entitled to the claimed tax exemption.

Ultimately, petitioners commenced an action seeking a judicial declaration that the property was taxable. On respondents' motion, the action was converted to a CPLR article 78 proceeding and venue was changed, as required, to Albany County (see, 231 AD2d 511). Upon reaching the merits of the petition, Supreme Court found that Royal was essentially an "alter ego" of the Comptroller, in his role as trustee of the CRF, and therefore was properly considered a tax-exempt State agency within the scope of RPTL 404 (1) by ORPS. Petitioners appeal.

Petitioners' initial contention, that the Comptroller is not statutorily empowered to create a corporation such as Royal, is meritless. Retirement and Social Security Law § 177 (7) expressly authorizes the trustee of a public pension fund (e.g., the CRF [see, Retirement and Social Security Law § 176 (1)]): "to invest the moneys thereof in * * * stock of corporations (including subsidiaries of the fund) * * * provided that (a) such * * * corporation (including a subsidiary of the fund) * * * has been established or organized primarily for the purpose of investing in securities, real estate or other investments in which the trustee * * * of a fund [is] authorized to invest pursuant to this section." Those investments include, inter alia, real estate "acquired in satisfaction of loans [or] mortgages" (Retirement and Social Security Law § 177 [6] [c]). That a fund trustee may create a subsidiary corporation, for the purpose of holding title to real estate obtained through, or in lieu of, foreclosure of a mortgage is implicit in these provisions; indeed, the references to investment in "subsidiaries" would be largely meaningless were the trustee not so empowered.*

Nor did Supreme Court err in concluding that Royal's relationship with the State is sufficiently close so that it can be considered "an arm or agency of the State" (Easley v New York State Thruway Auth., 1 NY2d 374, 376) for the purposes of RPTL 404 (1) (cf., MacFarland-Breakell Bldg. Corp. v New York State Thruway Auth., 104 AD2d 139, 141). Petitioners concede that real property owned directly by the retirement

---

* In any event, we fail to see how acceptance of petitioners' argument on this issue would inure to their benefit; if they were correct in their assertion that the Comptroller's creation of and investment in Royal were ultra vires, title to the property would revert to the Comptroller himself, as trustee, in which case it would unquestionably be entitled to the claimed exemption.

systems is entitled to a tax exemption (*see, Matter of New York State Teachers' Retirement Sys. v Srogi*, 84 AD2d 912, 913, *affd* 56 NY2d 690; *cf., Matter of City of New York v Tully*, 88 AD2d 701, *lv denied* 57 NY2d 606), but argue that Royal's status as an independent business corporation, along with several other factors (e.g., the fact that its employees are not State employees, that it is represented by private counsel, that it was not created directly by the Legislature and that it has no "statutorily declared purposes or functions"), distinguish it from those entities, such as the retirement systems and the Thruway Authority, which have been recognized as State agencies and preclude the relief sought.

As ORPS' General Counsel notes, however, "[t]hough Royal may technically be a legally independent entity, it is completely controlled by the Comptroller", as trustee of the CRF. Not only does Royal's certificate of incorporation require that its board of directors obtain the Comptroller's express permission before entering into virtually any transaction of consequence, the corporation's bylaws allow the Comptroller to remove the board of directors at any time, with or without cause. In addition, Royal has but one purpose—to hold and manage real property for the benefit of the CRF—and is powerless to act in any way that is inconsistent with that objective or contrary to the best interests of the fund beneficiaries. In carrying out this singular purpose, Royal directly "assists and promotes the efficient operation of the affairs of the state" (*Glassman v Glassman*, 309 NY 436, 441), in the same way as does the Comptroller himself, when he is performing his duties as trustee. In every relevant respect, the real estate in question is indistinguishable from other "property of the immune agency" (*Matter of City of New York v Tully, supra,* at 701). With these circumstances prevailing, neither the fact that Royal is endowed with "the powers and privileges of a corporation" (*Glassman v Glassman, supra,* at 441) (as are the retirement systems themselves [*see,* Retirement and Social Security Law §§ 10, 310]), nor any other aspect of its day-to-day operation, compels a result contrary to that reached by Supreme Court.

CARDONA, P. J., PETERS, SPAIN and CARPINELLO, JJ., concur.

Ordered that the judgment is affirmed, without costs.