Desmond, J.
The question is as to the validity of section 361-b of the Public Authorities Law, enacted in 1954, which confers exclusive jurisdiction upon the Court of Claims to hear and determine all claims against the New York State Thruway Authority for alleged torts or breaches of contract. The Thruway Authority is “ a body corporate and politic constituting a public corporation ’’ (Public Authorities Law, § 352) which performs part of the work of the State Government in building and maintaining a highway. It cannot be doubted that this Authority is an arm or agency of the State. The closeness of its relationship (cf. Glassman v. Glassman, 309 N. Y. 436, 441) to the State is illustrated by these situations among others: its members are appointed by the Governor with the approval of the Senate, its statutory purposes are declared to be “ in all respects for the benefit of the people of the state ’ ’, its functions are statutorily declared to be “ governmental ’ ’, its real property is held in the name of the State, the State advanced the money for constructing the Thruway, the State’s Public Works Department designed and supervised the construction work, the legal services are performed by the Attorney-General, the Authority must annually report to the Governor and Legislature, its funds are held by the State Comptroller, its bonds are guaranteed by the State pursuant to the vote of the People, and, eventually, the Authority’s properties will revert to the State itself (see Public Authorities Law, art. 2, tit. 9; Highway Law, art. XII-A). Since the State as sovereign may assert, waive, or condition at will immunity from suit for itself and its agents (see Matter of Brown v. Board of Trustees of Hamptonburg School Dist., 303 N. Y. 484, 489), the Legislature could in creating the Thruway Authority have refused to waive *377 immunity as to it and thus could have forbidden suits to be maintained against the Authority in any court or tribunal. Therefore, the only question here is as to whether the State Constitution so limits the jurisdiction of the Court of Claims that the Legislature could not validly confer on that court jurisdiction over claims that are asserted not against the State itself but against such an “ Authority ”. We see nothing in the language or history of section 23 of article VT of the Constitution to support such a construction.
Prior to 1950, the Court of Claims was not a constitutional court but was one of a series of boards and tribunals set up successively by various legislative acts to hear and audit various ldnds of claims against the State (see People ex rel. Swift v. Luce, 204 N. Y. 478). In the judiciary article submitted to the People by the 1938 Constitutional Convention but rejected by the People, there was a provision substantially like the present section 23 of article VI. The “ abstract ” thereof submitted to the voters at the 1938 election stated the purpose to be as follows: “ to continue the court of claims substantially as at present, but with the status of a constitutional court of record, the judges thereof to have the same qualifications and be subject to the same restrictions as justices of the supreme court ” (see p. 95 of document issued by the Secretary of State, Sept. 8, 1938). Then, by the 1949 election and effective January, 1950, there was approved by the People the present section 23 of article VT of the Constitution which continued the Court of Claims as a court of record, fixed the number, method of appointment, terms, qualifications, etc., of the judges and contained this sentence: ‘1 The court shall have jurisdiction to hear and determine claims against the state or by the state against the claimant or between conflicting claimants as the legislature may provide ”. With that proposed amendment there was submitted to the People an “ abstract ” thereof as follows: “ The purpose and effect of this proposed amendment is to make the Court of Claims a constitutional court and thereby deprive the legislature of its present power to abolish that court at any time. The court now hears and determines claims against the State pursuant to legislative authority and direction. This amendment would incorporate that statutory authority and direction into the constitution.” We have examined various parts of the records of the 1938 Constitutional *378 Convention (see Vol. 9, “ Problems Relating to Judicial Administration and Organization ”, p. 390 et seq.; Revised Record of the 1938 Convention, Vol III, pp. 2001-2002; Appendix to the Journal and Documents Volume of the record of that convention, p. 81). There is no suggestion in any of that material that a purpose existed to limit the jurisdiction of the Court of Claims to lawsuits brought directly against the State. Prior to the adoption of the 1949 amendment (supra), there was nothing in the Constitution to forbid the Legislature’s giving to the Court of Claims jurisdiction as to suits against agencies of the State. Because of sovereign immunity, none of the existing courts could take jurisdiction over such claims unless the Legislature should so permit. It follows that, without and prior to section 23 of article VI, the Legislature could have turned over to the Court of Claims jurisdiction as to suits against any or all of the subdivisions, agencies or authorities of the State. The 1949 amendment which became section 23 of article VI did not change that. Its purpose was to remove the Court of Claims from political control and uncertainty of existence and power. It did this by making the Court of Claims a constitutional court and by providing in the Constitution that the court should always have jurisdiction of suits against the State. But there was nothing in that to deprive the Legislature of its pre-existing and undisturbed authority, exercised in section 361-b of the Public Authorities Law, to confer on the Court of Claims authority to hear claims against such agencies of the State as the Thruway Authority.
It is significant that as far back as 1939, by section 1306-a of the Public Authorities Law, the Legislature gave the Court of Claims exclusive jurisdiction as to tort claims against the Saratoga Springs Authority. The Law Revision Commission in its 1939 report recommended that, if adopted, this provision should become part of the Public Authorities Law and there is nothing to indicate that anyone at any time doubted the constitutionality of that statute or so contended in any suit. Much more recently, in 1955 (see Public Authorities Law, § 163-a), the Legislature gave the Court of Claims exclusive jurisdiction to hear tort and contract claims against the Jones Beach State Parkway Authority. We are informed that the Court of Claims has heard and decided a large number of suits against the Jones Beach State Parkway Authority, apparently without anybody *379 asserting the unconstitutionality of this provision for exclusive jurisdiction.
Thus, the New York Legislature took these successive actions:
In 1939 it gave the Court of Claims jurisdiction over the Saratoga Springs Authority.
In 1948 it passed in its present form section 23 of article VT of the New York State Constitution (supra).
In 1949 it passed section 23 of article VT for the second time.
In 1954 it gave the Court of Claims jurisdiction over the Jones Beach State Parkway Authority.
In 1955 it gave the Court of Claims jurisdiction over respondent Thruway Authority.
Statutes are presumed to be constitutional, Legislatures are presumed to know what statutes are on the books and what is intended by constitutional amendments approved by the Legislature itself. Is it conceivable that the Legislature which enacted section 23 of article VT in 1948, and again in 1949, intended thereby to invalidate its own 1939 Saratoga Springs Act? And is it possible that the same Legislature intended in 1948 and 1949 to deprive the Court of Claims of jurisdiction over State ‘ ‘ Authorities ’ ’ and then turned around in 1954 and 1955 and solemnly conferred on that court jurisdiction over two more such Authorities?
It is clear, of course, that this is entirely different from the question in Malone v. State of New York (1 N Y 2d 837, decided herewith). In Malone, the question is as to whether the State as such was liable under the doctrine of respondeat superior for torts of a water-regulating district.
The judgment should be affirmed, with costs.