MacFarland-Breakell Building Corporation, Respondent, v New York State Thruway Authority, Appellant. (Claim No. 68371.)

Third Department, December 6, 1984

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for appellant.

*Bryant, O'Dell & Basso (Robert F. Silkey* of counsel), for respondent.

OPINION OF THE COURT

Levine, J.

Claimant entered into a contract with the New York State Thruway Authority (the Authority) in February, 1981, for the rehabilitation of Thruway bridges located in Montgomery County. The contract contained a clause which stated in substance that acceptance by the contractor of final payment would operate as a release of all claims arising out of the construction unless a detailed and verified statement of claim was served within 40 days of the mailing of such payment. During the

course of the project, disputes arose concerning whether site conditions not contemplated by the contract required claimant to incur additional expenses. Without resolution of these disputes, the Authority mailed a check for final payment on February 11, 1983 which was accepted by claimant. Some 34 days later, claimant filed with the Authority a verified statement of claim for some $400,000 in connection with those extra costs.

On September 2, 1983, claimant commenced an action in the Court of Claims to recover that amount. The Authority then moved to dismiss the claim as untimely under section 145 of the State Finance Law. That section provides in language almost identical to the clause of the contract that "[n]o provision contained in a construction contract awarded by any state department or agency shall bar the commencement of an action for breach of contract on the sole ground of the contractor's acceptance of final payment", provided that a detailed verified statement of claim is filed within 40 days of the mailing thereof. The basis for the Authority's motion to dismiss was the further clause of section 145 barring suit on such a statement of claim if not brought within six months of the mailing of final payment, "[a]ny provision of subdivision four, section ten of the court of claims act to the contrary notwithstanding". The Court of Claims rejected the Authority's position on the ground that the Authority was not a "state department or agency"; hence, section 145 of the State Finance Law did not apply and the court was able to exercise its discretion to permit a late filing of claim (Court of Claims Act, § 10, subd 6). This appeal by the Authority ensued.

The issue as framed by the parties and as resolved by the Court of Claims is whether the Authority is a State agency under section 145 of the State Finance Law. The Authority principally relies upon *Easley v New York State Thruway Auth.* (1 NY2d 374), wherein the Court of Appeals characterized the Authority as an agency of the State in upholding the constitutionality of section 361-b of the Public Authorities Law, which conferred jurisdiction on the Court of Claims to hear tort and contract claims against the Authority (*supra,* at p 376). Section 145 was enacted subsequent to the *Easley* case (L 1970, ch 513) and, therefore, the Authority contends that the Legislature is presumed to have used the phrase "agency of the State" with the quoted language of the *Easley* decision in mind.

· We think that the Authority's position represents an oversimplified application of *Easley* (*supra*) and of the analysis necessary to determine the legislative intent. First, a reading of the

*Easley* decision leads us to conclude that "agency" was not used therein as a term of art. Rather, in alluding to the Authority as "an arm or agency of the State", the Court of Appeals was merely holding that it performed a State function to a sufficient degree to permit the Legislature to constitutionally confer jurisdiction on the Court of Claims. This is not determinative on the issue of whether statutory language variously referring to the State and/or its departments, commissions and agencies was intended to apply to the Authority or similar quasi-governmental bodies which were created as entities separate from the State. As the Court of Appeals subsequently explained its *Easley* decision: "Certainly, there is a close relationship between the Thruway Authority and the State, and we simply remarked that fact in upholding the Legislature's power to confer upon the Court of Claims jurisdiction to determine all claims against the Authority * * *. However close such relationship may be, though, it is abundantly clear that the Authority stands on its own feet" (*Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn. v New York State Thruway Auth.*, 5 NY2d 420, 424).

Nor are we persuaded that the Legislature's use of the term "agency" when it enacted section 145 of the State Finance Law, some 14 years after *Easley* (*supra*) was decided, demonstrates its intent to have the statute apply to the Authority. The lack of substance of this indicator of intent is best demonstrated by legislation more contemporaneous to the *Easley* decision. In 1959, the Legislature enacted section 139-a of the State Finance Law (L 1959, ch 605, § 1) which mandates the inclusion of a waiver of immunity requirement in public contracts "awarded by the state or any public department, *agency* or official thereof" (emphasis added). By the same enactment (L 1959, ch 605, § 3), a parallel provision was made specifically applicable to the Authority and all other public authorities (Public Authorities Law, § 2875, formerly § 1751, renum § 2601). Under the Authority's theory of presumed legislative awareness of the *Easley* decision, however, the latter provision would have been totally superfluous.

The proper method of determining whether a particular "instrumentality of the State" is governed by a general governmental statute such as section 145 of the State Finance Law is a "particularized inquiry into the nature of the instrumentality and the statute claimed to be applicable" (*Grace & Co. v State Univ. Constr. Fund,* 44 NY2d 84, 88). As noted in *Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn. v New York State Thruway Auth.* (5 NY2d 420, 423, *supra*), the

Authority was created, *inter alia,* in order to function with a freedom and flexibility not permitted the State and its ordinary executive components. Clearly, such freedom extended to exempting the Authority and similar public corporations from adherence to the scheme of rigid statutory regulation of the mechanics of letting public works contracts and of the contents thereof. This is why the Authority has been held free to ignore the requirements of the State Finance Law regarding separate construction contract specifications for plumbing, heating and electrical wiring (State Finance Law, § 135; *Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn. v New York State Thruway Auth., supra*) and mandating contract awards to the "lowest responsible bidder" (State Finance Law, § 174; *Matter of Hanover Sand & Gravel v New York State Thruway Auth.,* 65 AD2d 860). It undoubtedly also underlies the view of a recognized authority that article IX of the State Finance Law (which includes section 145) does not at all apply to separate public benefit corporations such as the Authority (Spatz, Introduction to the State Finance Law, McKinney's Cons Laws of NY, Book 55, pp XIII-XIV).

In our view, section 145 appears to fall well within the general category of State Finance Law sections regulating the scope and effect of the provisions of public works contracts awarded by the State. As such, in the absence of a clear indication of contrary legislative intent, section 145 should be construed *in pari materia* with similar statutory provisions, as not being applicable to separately created public corporations such as the Authority. Therefore, we concur with the reasoning and the result reached here by the Court of Claims.

KANE, J. P., CASEY, WEISS and YESAWICH, JR., JJ., concur.

Order affirmed, with costs.