# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 7
The People &c.,
   Respondent,
  v.
Frederic Badji,
   Appellant.

Harold V. Ferguson, Jr., for appellant.
Michael J. Yetter, for respondent.

DiFIORE, Chief Judge:

The primary question presented by this appeal is whether the definition of credit card for purposes of Penal Law § 155.00 (7) includes the credit card account number, such that the People need not prove that a defendant physically possessed the tangible credit card in order to support a conviction of grand larceny based upon credit card theft. Here, defendant's conviction of grand larceny in the fourth degree was based on defendant's theft

- 1 -

of the victim's credit card account number to purchase goods, although there was no evidence that defendant possessed the physical card itself. We conclude that the definition of credit card in General Business Law § 511 (1), as supplemented by General Business Law § 511-a, is the controlling definition as designated by Penal Law § 155.00 (7) and, as a result, the evidence is legally sufficient to support defendant's conviction of grand larceny for stealing an intangible credit card account number.

I.

In 2015, defendant was hired as a temporary assistant to the victim, a managing director at a nonprofit organization. Defendant's administrative responsibilities included making travel arrangements and completing expense reports. In that capacity, he had access to the victim's corporate credit card information, Uber account information and the victim's physical workspace. Over a four-day period in April 2015, defendant, without authorization, used the victim's personal and corporate credit card accounts to make several purchases, some of which were captured on surveillance camera. The victim discovered the theft and alerted authorities. Defendant was charged by indictment with four counts of grand larceny in the fourth degree, attempted grand larceny in the fourth degree and two counts of criminal possession of stolen property in the fourth degree.

Relevant to our determination here, defendant used the victim's personal credit card to make several purchases.[1] Defendant swiped the credit card at the point of sale for each

_____

[1] Defendant was acquitted of the charges of fourth-degree grand larceny and fourth-degree criminal possession of stolen property relating to the alleged unauthorized use of a

purchase.  At trial, the surveillance footage of one of the transactions was admitted into evidence and the victim was permitted to testify to her opinion that defendant was the person depicted in the video making the purchase.  Limiting instructions were given to the jury, reminding them that they bore the ultimate responsibility of determining whether defendant was the person depicted and that they could accept or reject the victim's testimony on that issue.

Defendant also used the victim's corporate credit card account number to purchase a two-year cellular service agreement, an iPhone and other equipment at a Verizon store.  Defendant signed the receipt in his own name.  Still photographs taken from surveillance footage of this transaction were admitted into evidence.  The victim was again permitted to testify that she recognized defendant as the person depicted making the purchase, subject to the same limiting instruction to the jury.  The same corporate account number was also used to pay for an unauthorized Uber ride.  At trial, there was no proof that defendant possessed the physical credit card for either of these transactions.

The victim testified that, immediately after receiving notification that an Uber ride had been ordered on her corporate account without her knowledge, she confronted defendant, the only person who had access to her Uber account information.  Defendant provided a "flurry" of inconsistent responses when asked about the transaction and even chastised her for leaving her wallet open on her desk.  The victim further testified that she

---

different personal credit card belonging to the victim.  That credit card was swiped at the point of sale, but there was no surveillance footage of the transaction.

texted a photograph of defendant to the Uber driver who provided the unauthorized ride, in an attempt to ascertain whether the driver could identify defendant as the passenger. She also testified that, based on the driver's response she concluded that defendant was "probably" the passenger. However, the Uber driver ultimately testified that, although he recalled someone texting him a photo relating to the misuse of their account, he had no reaction to viewing the photo at the time.

The jury convicted defendant of three counts of grand larceny in the fourth degree, attempted grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree.

The Appellate Division unanimously affirmed, specifically rejecting defendant's challenge to the legal sufficiency of his grand larceny conviction involving the corporate credit card account number, despite the absence of proof that he was in physical possession of the corporate credit card (171 AD3d 499 [1st Dept 2019]). The Court also rejected defendant's evidentiary challenges as either unpreserved or without merit. A Judge of this Court granted defendant leave to appeal (33 NY3d 1066 [2019]) and we now affirm.

II.

"A person is guilty of grand larceny in the fourth degree when [such person] steals property and when . . . [t]he property consists of a credit card or debit card" (Penal Law § 155.30 [4]). For purposes of Title J of the Penal Law, offenses involving theft, a "'credit card' means any instrument or article defined as a credit card in" General Business Law § 511 (Penal Law § 155.00 [7]). Section 511, in turn, provides that "[i]n this article,"—i.e.,

article 29-A of the General Business Law—"unless the context or subject matter otherwise requires, . . . '[c]redit card' means and includes any credit card, credit plate, charge plate, courtesy card, or other identification card or device issued by a person to another person which may be used to obtain a cash advance or a loan or credit or to purchase or lease property or services on the credit of the issuer or of the holder" (General Business Law § 511 [1]). In 2002, the legislature enacted an "Additional definition," which, "[f]or purposes of" article 29-A, expanded the definition of credit card to include "any number assigned to a credit card" (General Business Law § 511-a).

The language of the additional definition of a credit card in section 511-a, incorporating account numbers, is free from ambiguity. Defendant argues, however, that the prefatory language limiting the application of the expanded definition in section 511-a to article 29-A of the General Business Law means that the expanded definition of credit card does not apply to the Penal Law, despite the Penal Law's long-standing direction to the General Business Law's definition of credit card (*see* Penal Law § 155.00 [7]). He argues that the legislative choice to enact a separate "additional" definitional statute, instead of amending the definition of credit card in section 511, demonstrates an intent to exclude intangible credit card information from any criminal offenses relating to theft.[2]

---

[2] That there are other ways the legislature could have elected to include credit card account numbers in the definition of credit card for purposes of article 29-A does not create an ambiguity in the statute or alter the clear legislative intent (*see* dissenting op at 8). Significantly, at no point does the dissent offer any interpretation of what section 511-a was intended to accomplish, if not to amend section 511.

"In statutory interpretation cases, the Court's primary consideration is to ascertain and give effect to the intention of the [l]egislature.  The statutory text is the clearest indication of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (*Matter of Mestecky v City of New York*, 30 NY3d 239, 243 [2017] [citations and internal quotation marks omitted]).  At the outset, the language of the relevant statutes unambiguously provides that a credit card number is incorporated within the section 511 definition of "credit card" for purposes of article 29-A of the General Business Law.    There is no dispute that the only definition of credit card applicable to grand larceny is, by legislative dictate of Penal Law § 155.00 (7), the one contained in section 511.  The inclusion of a credit card number in the definition of credit card under section 511-a necessarily applies to the definition in section 511, which is likewise contained in article 29-A of the General Business Law (*see People v Barden*, 117 AD3d 216, 234 [1st Dept 2014], *revd on other grounds* 27 NY3d 550 [2016]).  This expanded definition of credit card, in turn, necessarily applies to the definition of credit card used in the Penal Law.  The term "credit card" in section 511 should be interpreted to have a consistent meaning, rather than one meaning for purposes of article 29-A and another meaning for purposes of the Penal Law, which is entirely dependent on article 29-A for the definitional term (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 98 (a), Comment ["Inconsistency in the same statute is thought to be contrary to the intent of the lawmakers, and hence it is to be avoided"]).  The most reasonable reading of the plain language of the statutes is that section 511-a supplements the definition of section 511 for all provisions to which article 29-A is applicable, including the Penal Law.

"The primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the [l]egislature" and, although the strongest indication of the statute's meaning is in its plain language, "the legislative history of an enactment may also be relevant and is not to be ignored even if words be clear" (*Riley v County of Broome*, 95 NY2d 455, 463 [2000] [citations and internal quotation marks omitted]). Here, a review of the legislative history buttresses the conclusion that is evident from the statutes' plain language. The stated purpose of the 2002 legislation was to enact laws to prohibit and penalize identity theft (L 2002, ch 619). In addition to creating the expanded definition of credit card, the amendments created the new criminal offenses of identity theft and possession of personal identification information (Penal Law §§ 190.77-190.84), expanded the geographical jurisdiction for the prosecution of those crimes, established restitution remedies for card holders as crime victims and increased consumer protection (Sponsor's Mem, Bill Jacket, L 2002, ch 619). For the purposes of these new Penal Law offenses, the act defined personal identifying information to include a host of intangible information, including credit card account numbers (*see* Penal Law § 190.77 [1]). The act did not expressly amend any then-existing Penal Law offenses relating to credit cards; nor did it amend or create any other new provisions, apart from section 511-a, in article 29-A of the General Business Law.

In light of defendant's claim that "the purposes of" article 29-A of the General Business Law do not extend to the Penal Law, a further historical view is enlightening. Article 29-A was enacted in 1961 to protect credit card users from liability for fraudulent

purchases made on their cards (L 1961, ch 549, 1961 Legis Ann at 59). That initial version of the statute also contained a provision in the General Business Law making it the crime of larceny for a person to fraudulently obtain property or services by use of a credit card issued to another person (*see* L 1961, ch 549, 1961 Legis Ann at 59). In 1969, when the legislature amended the Penal Law and the General Business Law to address the increasing problem of credit card fraud, that General Business Law provision was repealed. The legislative history demonstrates that the "misuses prescribed" in that original General Business Law statute were "covered" by the additional amendments to the Penal Law and were crimes more properly addressed in the criminal law (*see* Mem in Support, Bill Jacket, L 1969, ch 115). Demonstrating the fundamental interaction of the laws in question, the legislature removed the definition of credit card from the Penal Law in favor of the General Business Law definition, explaining that it was "unnecessary to retain both definitions . . . and the General Business Law definition was felt to be the better of the two" (*see* Mem in Support, Bill Jacket, L 1969, ch 115). Significantly, the legislation also made the theft of a credit card a felony, to address the inability to prosecute the theft and possession of credit cards at the felony level under existing penal statutes due to valuation issues (*see* Mem in Support, Bill Jacket, L 1969, ch 115). The change reflected the reality that, although the card itself lacked any discernable market value, "in the hands of the unscrupulous, a stolen

credit card can be used to run up many thousands of dollars in purchases" (Mem in Support, Bill Jacket, L 1969, ch 115).[3]

The clear thrust of this legislative history is an ongoing effort to address the growth of economic crimes, the evolving methods used to perpetrate credit card fraud and the resulting need for greater consumer protections. As we have previously observed when addressing the 2002 amendments in a different context, the 2002 legislation was drafted at a time of increasing appreciation of the rise of e-commerce and the ease with which intangible personal information could be improperly obtained and used (*see People v Roberts*, 31 NY3d 406, 416 [2018]; Sponsor's Mem, Bill Jacket, L 2002, ch 619, citing March 2002 United States General Accounting Office Report on Identity Theft). We explained that the purpose of "the broader [2002] legislative scheme [was] to address [both

---

[3] The dissent selectively quotes from the canons of statutory interpretation and places excessive reliance on select dictionary definitions of "instrument" and "article" in support of its conclusion that a credit card, as defined, is limited to a tangible item (*see* dissenting op at 5-6). But the dictionary definitions do not conclusively lead to the dissent's interpretation. Given the inclusive nature of the terms—indeed, the same dictionary selected by the dissent also defines "instrument" as something intangible (American Heritage Dictionary [5th ed 2020] ["means by which something is done"])—a more natural reading is that "instrument" and "article" are umbrella terms meant to capture the definitions provided by the General Business Law—and not meant to limit those definitions. Moreover, though dictionary definitions can be "useful as guide posts . . . they are not controlling" (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 234) and "[w]e find the purpose of the law more helpful than dictionaries in deciding the meaning to be given" to these terms (*Bruni v City of New York*, 2 NY3d 319, 327 [2004]; *see People v Brooks*, 34 NY2d 475 [1974]). In light of the clear legislative intent to adapt to the changing technological landscape in the realm of credit card fraud, and, particularly, the use of credit card numbers on the internet, we will not presume that the legislature's use of these terms, beginning in 1969, was meant to curtail the scope of the statute in this manner (*see People v Finley*, 10 NY3d 647, 655 [2008]).

the] theft *and* use of personal identifying information" (31 NY3d at 423 [emphasis added]). We also noted that "[a] State Senate Committee Report drafted before the legislation was enacted noted that identity theft occurs 'when criminals steal the identity of law-abiding citizens by gaining access to their personal information such as name, address, Social Security Number, credit card numbers, bank account numbers, or date of birth to apply for credit or to obtain goods, services, or money'" (*id.*, quoting Rep of NY St Senate Comm on Investigations, Taxation and Govt Operations, Identity Theft: Is Your Identity Safe? at 1 [June 2000]). We concluded that the legislation was intended "to ensure maximum deterrence and the prosecution of unauthorized conduct as defined in the statute" (31 NY3d at 416). Defendant's proposed statutory construction ignores the stated purpose of the 2002 amendment to punish and prohibit identity theft, the overarching legislative concern for effective and punitive tools to stem the tide of illegal use of intangible information to commit crimes, and the legislative history demonstrating a consistent desire to combat and prosecute credit card fraud in all of its manifestations.

Defendant nonetheless posits that language in the sponsor's memo supports his position because, in explaining the creation of the additional definition of credit card in General Business Law § 511-a, the memo specified that it alters the definition of credit card "only for purposes of the general business law" (Sponsor's Mem, Bill Jacket, L 2002, ch 619; *see Matter of Luis C.*, 124 AD3d 109, 118 [2d Dept 2014]). Defendant's reliance on this broad language used in the sponsor's memo is inapposite, as it does not reflect the statutory text, which limits application of the additional credit card definition to article 29-

A of the General Business Law.  Nor does it account for the other provisions that separately define "credit card"—either within article 29-A itself (*see* General Business Law § 520-c [3] [a] ["For the purposes of this section"]), in different articles of the General Business Law (*see* General Business Law § 391-l [1] [d] ["As used in this section"]; § 521 [5] ["As used in this article"]; § 523 [4] [applying article 29-A definition]) or in other chapters of the Consolidated Laws (*see* Insurance Law § 3442 [a] [9]; Education Law § 6304 [11] [a] [i]; Parks, Recreation and Historic Preservation Law § 13.15 [5] [b] [1]).  The reasonable reading of the sponsor's language, which, of course, does not alter the actual language of the statute, is as an acknowledgement that there were other definitional provisions of the Consolidated Laws to which this additional definition may not apply, rather than a subtle attempt to build a wall between the definition as applied to article 29-A and Title J of the Penal Law—a definition that had been shared for decades.

Defendant's suggestion that the legislature did not intend that the *theft* of intangible account information itself would be punishable as grand larceny because the *possession* or *misuse* of that account information is addressed by other provisions of the Penal Law is likewise without merit (*see Matter of Luis C.*, 124 AD3d at 118).  One does not eliminate criminal offenses simply because a defendant's conduct falls within the ambit of more than one statute (*see United States v Batchelder*, 442 US 114, 123-126 [1979]; *People v Eboli*, 34 NY2d 281, 287 [1974]).  To be sure, the legislature has created overlapping criminal statutes in its treatment of an access device, which includes the intangible property of calling card or credit card account numbers "that can be used to obtain telephone service"

(Penal Law § 155.00 [7-c]).[4]  Specifically, it is the crime of fourth-degree grand larceny to steal the specific intangible property that constitutes an access device, defined to include a "credit card number or account number," with the intent to use it unlawfully (*see* Penal Law §§ 155.30 [10]; 155.00 [7-c]).  It is a separate offense to use the access device unlawfully to obtain telecommunications services (*see* Penal Law §§ 190.75; 190.76).

Defendant also maintains that any interpretation that results in the unequal treatment of credit cards and debit cards should not be countenanced.  Yet debit and credit cards are not similarly defined and the legislature chose not to expand the definition of debit card in 2002, when it created the additional definition of credit cards.  Although the legislature has generally treated the two types of cards similarly, the fact is that they serve different purposes—only one allows for the purchase of property on credit.  Moreover, article 29-A contains several other sections directed solely to the credit card (*see* General Business Law §§ 515, 518, 519, 520, 520-b, 520-c).  Based on the General Accounting Office (GAO) report referenced in the 2002 sponsor's memo, which emphasized payment card fraud and referenced MasterCard and Visa as sources for fraud losses, the legislature reasonably focused on credit cards as more closely linked to identity theft and fraudulent transactions.

---

[4] In this vein, the dissent's premise that the legislature has created a "deliberate distinction" between the theft of material items and intangible property is demonstrably incorrect (*see* dissenting op at 11).  Since 1992, the legislature has embraced the concept that the crime of larceny is applicable to specifically described intangible property (L 1992, ch 491)—including credit card account numbers.  Again, the dissent's disagreement with the manner in which the legislature chose to define "credit card" for the purpose of Penal Law § 155.00 (7) does not change either the unambiguous statutory language or the legislative intent.

Indeed, the GAO report considered the increase in internet usage in the 1990s and observed that the fastest growing activity was online shopping. It is perfectly reasonable to interpret the 2002 amendments as an attempt to keep pace with commercial technology—particularly e-commerce—and an acknowledgement that possession of a physical card was obsolete in online credit transactions, making the theft of the credit card account number the same crime as the theft of the card itself.

To that end, the dissent's invocation of the concept of asportation is completely misplaced (*see People v Olivo*, 52 NY2d 309, 317-318 [1981]; *People v Alamo*, 34 NY2d 453-459-460 [1974]). "It is to be noted that not since 1942 have we in this jurisdiction been strictly bound to the ancient common-law concepts of larceny . . . There is nothing in the definitions section [of Penal Law § 155.00] which states that asportation is in all cases an essential element of such taking or obtaining" (34 NY2d at 459-460). Ancient common law could not possibly have conceived of the evolving technology in this area—particularly, e-commerce. Similarly, the dissent's overly strict construction of the statute loses sight of the evil the legislature was attempting to remedy. "[G]iven that the enactment of a criminal statute often 'follow[s] in [the] wake' of the activity it attempts to penalize, courts should not legislate or nullify statutes by overstrict construction" (*People v Versaggi*, 83 NY2d 123, 131 [1994], quoting *People v Abeel*, 182 NY 415, 421-422 [1905]).

Finally, defendant seeks to invoke the rule of lenity, asserting that, whenever there are two "plausible" readings of a criminal statute, a reading more favorable to the defendant

must be adopted (*see People v Green*, 68 NY2d 151, 153 [1986]).  This paraphrasing of

the rule of lenity omits significant elements of the analysis.  Although ambiguity in a

criminal statute should be construed in the defendant's favor, underpinning the rule of

lenity is the concern that an individual should have "fair warning" of conduct that is

deemed criminal and that activity that will result in criminal punishment be clearly defined

by the legislature, rather than the courts (*see United States v Bass*, 404 US 336, 348 [1971]).

Lenity is warranted where the courts have the task of discerning the undeclared will of the

legislature in an ambiguous statute (*see Bell v United States*, 349 US 81, 83 [1955]).  In

that instance, the language used in a criminal statute is to be read "with the saving grace of

common sense with which other enactments, not cast in technical language, are to be read"

(349 US at 83).  Thus, "[t]he mere possibility of articulating a narrower construction . . .

does not by itself make the rule of lenity applicable" (*Smith v United States*, 508 US 223,

239 [1993]).[5]  The rule "applies only if, after seizing everything from which aid can be

derived . . . we can make no more than a guess as to what [the legislature] intended.  To

invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the

statute" (*Muscarello v United States*, 524 US 125, 138-139 [1998] [citations and internal

quotation marks omitted]; *see also Ocasio v United States*, __ US __, 136 S Ct 1423, 1434

n 8 [2016]).  There is no such ambiguity here in the language of the statute and there is

---

[5] The dissent implicitly acknowledges the lack of support for its sweeping interpretation
of the rule of lenity by resorting to reliance upon another dissenting opinion, not adopted
by the United States Supreme Court, for the proposition that the rule should be invoked
when at least one judge interprets a penal statute in a manner that is favorable to the
defendant (*see* dissenting op at 20).

ample evidence of the stated legislative intent for the 2002 amendment. Defendant offers no reasonable argument why the theft of a credit card bearing the account number to enable a purchase would constitute larceny, while theft of the credit card account number itself used to enable the purchase would not. Application of the rule of lenity is therefore unwarranted.

Finally, defendant's remaining evidentiary arguments as to the surveillance footage are without merit. His additional argument that the court erred in allowing the victim to provide hearsay testimony that the Uber driver confirmed defendant's identity is not preserved.

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting in part):

Defendant used his supervisor's credit card account number to purchase a telephone and service contract without permission. No doubt, defendant is guilty of a crime, just not the crime of which he was convicted. For the unauthorized use of the credit card number—officially referred to as the victim's personal identifying information—defendant could have been prosecuted for second-degree identity theft, a class E felony (Penal Law § 190.79

[1]). Instead, he was prosecuted for fourth-degree grand larceny of the credit card (Penal Law § 155.30 [4]). That was a mistake. Fourth-degree grand larceny requires theft of a tangible card, and there was no proof that defendant ever possessed the card. The plain language of the controlling statutes, our canons of construction, and the relevant legislative history require this reading of the Penal Law.

Even assuming, as the majority does, that under the Penal Law theft of a tangible card is not a necessary element of fourth-degree grand larceny, the majority's affirmance of defendant's conviction is contrary to the rule of lenity. As the majority acknowledges, the Penal Law must clearly define crimes and their punishments. Where the Penal Law is ambiguous, it must be interpreted in the defendant's favor (*People v Golb*, 23 NY3d 455, 468 [2014]). The majority knows well that, at the time that defendant made the underlying transactions, the law was unsettled as to whether the Penal Law definition of "credit card" included the card number. Therefore, the rule of lenity dictates that this Court adopt the interpretation that favors defendant. Here, that means that the prosecution was required to prove that defendant had physical possession of the credit card.[1]

## I.

Defendant Frederic Badji was convicted of several crimes arising from his unapproved charges and attempted charge to his former supervisor's personal and

---

[1] I agree with the majority that defendant's challenges to various evidentiary rulings are either unpreserved or without merit.

corporate credit card and ride-hailing accounts. On appeal, defendant challenges as legally insufficient his conviction of one of several fourth-degree grand larceny counts for the theft of his supervisor's credit card (Penal Law § 155.30 [4]). It is undisputed that the prosecution failed to admit evidence that defendant took the physical card or possessed it at the time of the illicit purchase. It is just as clear that the transaction was completed using the number associated with the card.

The Appellate Division upheld defendant's conviction, notwithstanding the lack of proof of possession of the physical credit card, relying on its prior decision in *People v Barden* (*People v Badji*, 171 AD3d 499, 500 [1st Dept 2019], citing *People v Barden*, 117 AD3d 216, 230-236 [1st Dept 2014]). We reversed *Barden* on different grounds, but in our decision noted a department split on whether credit card numbers alone constituted a "credit card" under the Penal Law's larceny provisions (*Barden*, 27 NY3d at 557, *comparing Barden*, 117 AD3d 216, *with Matter of Luis C.*, 124 AD3d 109 [2d Dept 2014]). This appeal presents the question that we were unable to reach in *Barden*.

II.

"When presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature" (*People v Wallace*, 31 NY3d 503, 507 [2018] [internal citations omitted]). The statutory text is the clearest evidence of legislative intent (*People ex rel. Negron v Superintendent, Woodbourne Corr. Facility*, No. 76, 2020 WL 6828791, at *2 [2020]). We interpret the text "according to its natural and obvious sense, without resorting to an artificial or forced

construction" (McKinney's Cons Laws of NY, Book 1, Statutes § 94; *see also Samiento v World Yacht Inc.*, 10 NY3d 70, 78 [2008] [applying these canons of statutory interpretation]). A construction of a statute will be rejected, however, if it renders the statute absurd or produces objectionable, anomalous, or unjust results (McKinney's Cons Laws of NY, Book 1, Statutes §§ 141; 143; 145; 146; *see also DeTroia v Schweitzer*, 87 NY2d 338, 342 [1996] [applying these canons]). Applying these principles, I conclude that grand larceny of a credit card requires proof that the defendant stole the physical card.

A.

Under Penal Law § 155.30 (4), a person is guilty of fourth-degree grand larceny when they "steal[] property and when[] [t]he property consists of a credit card or debit card." Penal Law § 155.00 (7) defines "credit card" as "any instrument or article defined as a credit card in section five hundred eleven of the [G]eneral [B]usiness [L]aw." In turn, section 511 (1) of the General Business Law—titled "[d]efinitions"—defines "credit card" as "any credit card, credit plate, charge plate, courtesy card, or other card or device" that "may be used to obtain a cash advance or a loan or credit or to purchase or lease property or services on the credit of the issuer or of the holder." Separately, General Business Law § 511-a, titled "[a]dditional definition," states that, "[f]or purposes of this article, 'credit card' shall also mean any number assigned to a credit card" (*id.*).

Beginning with the clearest indicator of legislative intent, the text of Penal Law § 155.00 (7) defines "credit card" as a tangible item. Section 155.00 (7) states that a credit card is "any instrument or article" defined as a "credit card" in General Business Law § 511. The words "instrument" and "article" denote something tangible (Black's Law

Dictionary [11th ed 2019], article [defining "article" as "a particular item or thing"]; The

American Heritage Dictionary [5th ed 2020], instrument [defining "instrument" as "[a] tool

or implement used to do or facilitate work"]); *Majewski v Broadalbin-Perth Cent. School*

*Dist.*, 91 NY2d 577, 583 [1998] [instructing that the Court must give "effect to the plain

meaning" of statutory language]; *see also People v Hedgeman*, 70 NY2d 533, 537 [1987];

*cf. People v Sansanese*, 17 NY2d 302, 306 [1966] [holding that a driver's license is not

"property," under the plain meaning of that word, for purposes of theft by false pretenses]).

Thus, the reference to the General Business Law definition in § 511 applies only to tangible

items listed in that cross-referenced section. This language alone is fatal to the majority's

analysis.[2] But there is more.

---

[2] This textual analysis of the words chosen by the legislature is the first step in analyzing the meaning of the statutes in question, a step that this Court's precedent instructs must be taken. And, as the majority recognizes (majority op at 9 n 3), in the enterprise of ascertaining the meaning of statutory text, "[d]ictionary definitions may be useful as guideposts in determining the sense with which a word was used" (McKinney's Cons Laws of NY, Book 1, Statutes § 234; *Rosner v Metro. Prop. & Liab. Ins. Co.*, 96 NY2d 475, 480 [2001]; *see e.g.*, *Town of Delaware v Leifer*, 34 NY3d 234, 242 [2019] [DiFiore, Ch. J.] [citing Merriam-Webster Online Dictionary for definitions of the words "facility" and "present"]; *People v Flanagan*, 28 NY3d 644, 660 [2017] [DiFiore, Ch. J.] [citing Black's Law Dictionary for the definitions of "duty" and "discretionary duty"]). The majority observes that dictionary definitions, while useful as guideposts, should not supplant clear indications of legislative intent (majority op at 9 n 3). I agree with this uncontroversial statement. Here, the legislative intent is clear—the Penal Law does not incorporate the additional definition of "credit card" supplied by General Business Law § 511-a exclusively for purposes of the General Business Law. Thus the meanings of "instrument" and "article" as physical things comport with the exhibited legislative intent that a credit card is exclusively a tangible object. It is the majority, and not I, that relies on peripheral meanings for these words to accommodate its reading of the statute. Indeed, a "means by which something is done" does not exclusively denote something intangible (*contra id.*). A pen is a means to write; a motor is a means to locomote; and a nail is a means to hold material together, and just so a credit card is a means of purchasing a product or service on credit. It is telling that the word "intangible" or any synonym for that word are absent from

The fact that Penal Law § 155.00 (7-c) defines an "access device" to include credit card numbers confirms that the legislature's word choice in section 155.00 (7) was deliberate. As section 155.00 (7-c) demonstrates, the legislature knows how to refer to intangible numbers. Accordingly, the legislature's omission of a reference to numbers from section 155.00 (7) can only be understood as intentional (*see e.g. Matter of Kosmider v Whitney*, 34 NY3d 48, 58, *rearg denied*, 33 NY3d 1134 [2019]; *Xiang Fu He v Troon Mgt., Inc.*, 34 NY3d 167, 172 [2019]; *Matter of Robert J.*, 2 NY3d 339, 345 [2004]; *People v Williams*, 66 NY2d 659, 660 [1985]; *see also People v Finnegan*, 85 NY2d 53, 58 [1995] ["We have firmly held that the failure of the Legislature to include a substantive, significant prescription in a statute is a strong indication that its exclusion was intended"]).

Significantly, section 155.00 (7) adopts the definition set forth in General Business Law § 511, not section 511-a. Section 511 (1) defines "credit card" in tangible terms as "any credit card, credit plate, charge plate, courtesy card, or other card or device" that "may be used to obtain a cash advance or a loan or credit or to purchase or lease property or services on the credit of the issuer or of the holder." Cards, plates, and devices are all readily understood as physical objects. This fact did not escape the legislature, which is "charged with knowledge of the law" (*People ex rel. Postal Tel.-Cable Co. v State Bd. of Tax Commrs.*, 224 NY 167, 183 [1918]; *see also People ex rel. Sibley v Sheppard*, 54 NY2d 320, 325 [1981]; *Easley v New York State Thruway Auth.*, 1 NY2d 374, 379 [1956];

---

the American Heritage Dictionary definition that the majority and I cite (*see generally* American Heritage Dictionary [5th ed 2020], instrument).

McKinney's Cons Laws of NY, Book 1, Statutes § 222 ["A statute is to be construed with reference to earlier statutes *in pari materia*"]). Thus, we must assume that the legislature knew Penal Law § 155.00 (7) exclusively referenced General Business Law § 511 when it enacted General Business Law § 511-a as a separate provision. Yet, when it enacted section 511-a, the legislature refrained from changing a single word in section 511 or Penal Law § 155.00 (7).

Under the majority's interpretation, the legislature would have inexplicably ignored or neglected well-established and common drafting rules. Specifically, that statutory amendments are accomplished by revisions to the existing text that the legislature intends to change (*see e.g.* L 1986 ch 514, 2503 [amending the definition of terms "(b)usiness records" and "written instrument" as they appear in Penal Law § 175.00 to include "computer data or a computer program"]; L 2005 ch 558, 2 [adding the term "computer network" to the list of definitions in Penal Law § 156.00]; 2017 NY Senate Bill 982 Mar. [amending Banking Law § 2 so that the term "[c]onsummation of a mortgage loan" included that loan applicants could consummate loans "by electronic signature"]). If the legislature meant to amend General Business Law § 511 to define "credit cards" as including "credit card numbers," it would have done so by simply adding the seven operative words set forth in section 511-a to section 511. "Whenever a reading arbitrarily ignores" a statute's or provision's "components or inadequately accounts for them, the reading may be presumed improbable" (Antonin Scalia & Bryan A. Garner, Reading the

Law: The Interpretation of Legal Texts 174 [2012], quoting E.D. Hirsch, Validity in Interpretation 236 [1967] [internal quotation marks omitted]).

The most logical explanation for the separate provision is that the legislature did *not* expand section 511's definition of "credit card"—the improbable interpretation adopted by the majority (majority op at 6). Otherwise, there would be no reason for the legislature to have gone through the effort of enacting a wholly separate provision, and to have gone one step further to title it "[a]dditional definition" (McKinney's Cons Laws of NY, Book 1, Statutes § 123 [providing that statute titles "may be resorted to as an aid in the ascertainment of legislative intent"]). If the legislature intended for section 511-a to operate as an amendment to the definition contained in section 511, it would have left some hint of its intent, perhaps by titling section 511-a "amended definition" or "amendment to the definition of 'credit card.'" It did neither and instead separated the two definitions. Notably, section 511-a does not refer back to section 511 (1). It is clear from the statute's design that the legislature enacted section 511-a as a separate provision precisely because it was not intending to amend section 511.

In support of its interpretation, the majority asserts that section 511-a's only conceivable purpose would be to amend section 511 (majority op at 5 n 2). This ignores the obvious and explicit function of section 511-a, which is to add a definition of credit card to General Business Law Article 29-a, which governs the unauthorized or improper use of credit and debit cards. Section 511-a serves this function without changing the definition contained in section 511.

For instance, under Article 29-a, businesses are prohibited from imposing surcharges on individuals who use credit cards in lieu of cash (General Business Law § 518), and, if a business requires that a person using a credit card make a minimum purchase before accepting the credit card, it must post the requirement "conspicuously and in all advertisements that mention that credit cards are accepted" (General Business Law § 519 [1]). 511-a prevents businesses from circumventing these consumer protection requirements by levying surcharges for the use of credit card numbers or failing to post information about minimum purchase requirements when only credit card numbers are used. Take as another example the fact that credit card holders can defend against actions for purchases made on credit, for which they are ostensibly obligated, by indicating that the underlying transaction "arose out of the unauthorized use" of their credit cards (General Business Law § 514 [1] [a]). Section 511-a makes clear that credit card holders can defend against these actions where their credit card numbers alone were used without their authorization.

B.

The purpose of this legislative action is easily understood by placing the amendment in its historical context. When the legislature added General Business Law § 511-a, it enacted a suite of identity-theft crimes in the same bill. These new Penal Law provisions address unlawful possession and use of personal identifying information, including credit card numbers. The legislature intended these provisions to:

"aid law enforcement in combating one of the fastest growing financial crimes. At the time, there was a growing awareness across the country and in New York of the ease with which personal information can be obtained through the use of technology and by access to the Internet, and that confidential data was vulnerable to computer security system breaches. The increased unauthorized use of individuals' personal information caused significant financial harm to victims, who were often unaware that their information had been stolen until they received debt collection notices or discovered their credit ratings had been ruined. The law was drafted to ensure maximum deterrence and the prosecution of unauthorized conduct as defined in the statute" (*People v Roberts*, 31 NY3d 406, 416 [2018] [internal citations and quotation marks omitted]).

The Penal Law provisions enacted in 2002 ensure that a person, like defendant, is punished for the unauthorized possession and use of another's credit card number. We may not read the Penal Law in a manner that ignores the legislature's carefully drawn scheme, which punishes misuse of credit card numbers through these new provisions and left unchanged larceny's physical-possession requirement (*People v Anonymous*, 34 NY3d 631, 641 n 4 [2020] [noting that "we are obligated to adhere to" the legislature's "determination"]; *People v Boston*, 75 NY2d 585, 589 [1990] ["(I)t remains for the Legislature—not the courts—to rewrite . . . statute(s)"]; McKinney's Cons Laws of NY, Book 1, Statutes § 73, Comment ["It is a basic rule of statutory construction that the courts should avoid judicial legislation, since the Constitution of this state vests the legislative power in the Senate and Assembly; and courts may not legislate under the guise of interpretation of statutes"]). Indeed, the sponsor's memorandum in support of the bill that includes the Penal Law amendments states that "[s]ection 511-a is created in the general business law, providing that *only for purposes of the [G]eneral [B]usiness [L]aw* the term

credit card shall also mean any number assigned to a credit card" (Assembly Sponsor's Memorandum, A 4939-E at 2 [emphasis added]).[3]

This illustrates the legislature's deliberate distinction in the Penal Law between theft crimes involving possession of a material thing and identity theft and fraud, which criminalize unauthorized possession of information.[4] The Penal Law defines possession as physical "possession" or "dominion and control over tangible property" (Penal Law § 10.00 [8]). "Tangible" means "'material or 'having physical form'" (*People v Aleynikov*, 31 NY3d 383, 398 [2018]). By enacting the identity theft crimes, the legislature broke from the Penal Law's definition of "possession" and created criminal liability for possession of intangible personal identification information (Penal Law § 190.77-190.84). However, it

---

[3] The majority's interpretation of the sponsor's memorandum is nonsensical (majority op at 7-10). Because the bill amended the Penal Law and the General Business Law, the obvious purpose of explaining that General Business Law § 511-a applies "only for purposes of the [G]eneral [B]usiness [L]aw" is to clarify that section 511-a is limited to the General Business law, and is not part of the cross-reference in the Penal Law to section 511 (1) (*contra* majority op at 9-10). No more persuasive is the majority's reliance on definitions of "credit card" found in other sections of the General Business Law (majority op at 10). The specific definitions within individual provisions supersede the general definition found elsewhere in the article (McKinney's Cons Laws of NY, Book 1, Statutes § 238; *People v Mobil Oil Corp.*, 48 NY2d 192, 200 [1979]). Moreover, these different definitions confirm that the legislature qualified the meaning of "credit card" in response to different situations. As I discuss *infra*, that is what the legislature has done—the unlawful use of—credit card numbers is criminalized through the identity theft crimes, not larceny, which requires theft of a tangible object.

[4] The majority reinforces this point by indicating other instances demonstrating that the legislature explicitly criminalizes the theft of intangible property when it so intends (majority op at 12 n 4). Here, the plain text of the provisions at issue and the legislative history indicate that there is no such intent.

left unchanged the Penal Law's definition of possession outside of the context of identity theft and fraud.

## C.

Preserving General Business Law §§ 511 and 511-a as distinct provisions also accords with our common law understanding of larceny, which requires asportation—the carrying away of property to complete a theft (*see People v Olivo*, 52 NY2d 309, 318 n 6 [1981]; *People v Alamo*, 34 NY2d 453, 457 [1974]; *Harrison v People*, 50 NY 518, 523-524 [1872]). Theft of the tangible card satisfies the asportation requirement. In contrast, when a person merely learns a credit card number without taking the card, they have not separated that information from its rightful owner or gained exclusive control over the card or numbers. The credit card owner retains access to and use of the numbers and card.

The majority unravels our precedent with its misinterpretation of *Alamo*'s analysis. Rather than retreat from established precedent, *Alamo* reaffirmed the core meaning of asportation as possession or exclusive control over another's property. In *Alamo*, the defendant was charged with larceny for forcibly entering and starting a car. On appeal, the defendant challenged the jury instructions because they provided that a larceny was complete where a person exercises exclusive control over the vehicle and that movement of the vehicle is not required to accomplish that level of control (*id.* at 456). On appeal, this Court observed that "[i]t is woven into the fabric of the common law that asportation is an element of a completed larceny" (*id.* at 457). It noted that asportation was listed as

one of "the essential elements of larceny" in *Harrison*, 50 NY 518 (*id.* at 457). The Court further observed that, in *Harrison*, it had held that a pickpocket had completed a larceny by grasping a victim's wallet and lifting it "several inches and not all the way out of the [victim's] pocket" (*id.*). "While it is to be conceded that the element of movement was a consideration in the court's reasoning" in *Harrison*, "critical analysis of that reasoning discloses that the elements of possession and control were the paramount elements sought and that the fact of movement merely tended to support the idea of control" (*id.*). *Harrison* explained that "[t]o constitute the offence of larceny, there must be a taking *or* severance of the goods from the possession of the owner. . . . But possession, so far as this offense is concerned, is the having or holding or detention of property in one's power or command" (*id.* at 457-458 [internal quotation marks and citation omitted]).

The *Alamo* Court observed that an automobile "is itself an instrument of transportation and when activated comes within the total possession and control of the operator. In this situation movement or motion is not essential to control" (*id.*). Thus "[a]bsent any evidence that the vehicle is somehow fastened or immovable because of a mechanical defect, the thief has taken command of the object of the larceny" by turning the vehicle on and has thus "'taken' the property from its owner surely as much so as had the thief in *Harrison*" (*id.*). The legislature had indicated its endorsement of this understanding in Penal Law § 165.05 (1), in which it defined the unauthorized use of a vehicle as the "operation" of the vehicle (*id.* at 459).

The Court upheld the trial court's instruction given that it did not abnegate the function of asportation as a means of measuring a defendant's control and dominion over the object of the theft (*id.*). That same reasoning does not apply here. There is no evidence that defendant took the complainant's physical credit card, and accordingly he did not have exclusive dominion and control over the card. To the contrary, as the complainant retained her card and the ability to make purchases with it. The exception to this long-established and "essential" element of larceny described in *Alamo* does not exist here.

By holding that a defendant can possess a credit card merely by apprehending its numbers, the majority has eliminated asportation as an element of fourth-degree grand larceny and, more fundamentally, the element of exclusive possession and control that asportation manifests. Far from being the next step in the common law evolution of our understanding of larceny, this is a reinvention of the crime to fit the majority's preferred outcome of the case.

The common law "must be held no further abrogated than the clear import of the language used in the statutes absolutely requires" (*Bertles v Nunan*, 92 NY 152 [1883]; McKinney's Cons Laws of NY, Book 1, Statutes § 153 ["A change in long established rules of law is not deemed to have been intended by the Legislature in the absence of a clear manifestation of such intent."]). My interpretation leaves the asportation requirement

intact while providing a sensible reading to the Penal Law and its cross-reference to the General Business Law.[5]

## D.

Unlike the majority's interpretation, reading the larceny provision to require possession of the credit card does not lead to absurd results. As the Second Department stated in *Matter of Luis C.*, "[a] person who appropriates account information is not immune from punishment" (124 AD3d at 115-16). Although a person who has unauthorized possession of a credit card number is not guilty of fourth-degree grand larceny, they are liable for unlawful possession of personal identification information, a Class A misdemeanor or Class D or E felony, depending on the facts (Penal Law §§ 190.80-a-190.83). Criminal liability is greater for a person who steals a physical credit card

---

[5] The majority further dismisses our established definition of larceny by suggesting that asportation is an outdated concept (majority op at 13). If the legislature intended to eliminate that requirement for purposes of fourth-degree grand larceny, it would have done so explicitly and not through cryptic atmospherics like adding a definition to the General Business Law that is not referenced by the Penal Law, and in a bill that created crimes that would make the theft of credit card numbers redundant.

In any case, the majority's underlying premise is unfounded. Individuals have had the ability to apprehend information to which they were not privileged long before the advent of "e-commerce." For example, state, trade, and military secrets have existed and been learned illicitly as long as asportation has been a requirement of larceny, and yet asportation survives as an essential element of the crime, which the prosecution must prove beyond a reasonable doubt. Thus, the majority's claim that earlier generations of judges "could not have conceived" of the apprehension of information without the movement of property simply because they lacked internet access is unpersuasive (*id.*). And, as I discuss, no "evil" goes unpunished here (*contra* majority op at 10) unless the prosecutor foregoes charging defendants who misappropriate credit card numbers with the legislatively-adopted identity theft crimes. Our elected officials did their job, it is up to the prosecutors to do theirs. When they do not, it is not our job to find a work around to the legislation.

intending to use it unlawfully because they are criminally liable for both larceny for the theft of the card (a Class E felony) and unlawful possession of personal identification information. Defense counsel concedes the same.

Heightened criminal exposure in this context makes sense, as a person who possesses a stolen credit card is able to complete transactions that require not only the card number but the card itself. For example, the holder of a card can attempt to make purchases in a brick-and-mortar establishment by tapping, swiping, or inserting the card in a card reader as well as online or over the phone, whereas a person with a number alone is limited to purchases for which presentation of the card is not required.

While my reading does no violence to the legislative design, the statutory reading adopted by the majority leads to the nonsensical disparate treatment of victims based solely on the type of card that they own. Under the majority's reading, crimes against debit card holders are punished less harshly than crimes against credit card holders with no logical justification. Consider the facts of *Matter of Luis C.*, where the individual used his uncle's debit card numbers without consent to buy a pair of sneakers worth $120. Such a defendant could be charged with third-degree identity theft (Penal Law § 190.78 [1]) and third-degree unlawful possession of personal identification information (Penal Law § 190.81), which are both class A misdemeanors. Under the majority's interpretation, if this same person instead had used his uncle's credit card numbers, the District Attorney could charge him with fourth-degree grand larceny, a class E felony (Penal Law § 155.30 [4]), in addition to the two class A misdemeanors.

This result defies reason. It is also in clear contravention of the legislative scheme, which, in other parts of the Penal Law, makes no distinction between unauthorized possession or use of debit and credit card numbers and punishes both equally.

Moreover, the identity theft crimes elevate punishment in cases involving aggravating factors. For example, first-degree unlawful possession of personal identification information is a D felony which requires either the supervision of accomplices, a previous conviction for an identity theft crime, or that the defendant held the information with the intent to commit second-degree identity theft against a victim that the defendant knew was a member of the armed forces (Penal Law § 190.83). Second-degree identity theft is an E felony which requires the possession of 250 or more items of personal identification information with the intent to commit a separate identity fraud crime (Penal Law § 190.82; *see also* Penal Law § 190.78 [requiring the thief to have caused financial loss or to have intended to commit a separate crime that is at least a class A misdemeanor]; Penal Law § 190.79 [requiring theft of $500 or commensurate financial hardship or that the assumption of identity was to commit or attempt to commit a felony]; Penal Law § 190.80 [requiring theft of $2,000 or commensurate financial hardship or the commission or attempted commission of a D felony or higher]; Penal Law § 190.80-a [requiring the assumption of the identity of a member of the armed forces' while that person was deployed overseas]).

The majority's myopic conclusion that in 2002 the legislature was focused solely on the misuse of credit cards (majority op at 10) simply ignores the scope of the identity

theft crimes, which are not limited to credit card numbers. The legislature broadly

criminalized the use of personal identifying information, i.e.,

> "a person's name, address, telephone number date of birth, driver's license
> number, social security number, place of employment, mother's maiden
> name, financial services account number or code, savings account number or
> code, checking account number or code, brokerage account number or code,
> credit card account number or code, debit card number or code, automated
> teller machine number or code, taxpayer identification number, computer
> system password, signature or copy of a signature, electronic signature,
> unique biometric data that is a fingerprint, voice print, retinal image or iris
> image of another person, telephone calling card number, mobile
> identification number or code, electronic serial number or personal
> identification number, or any other name, number, code or information that
> may be used alone or in conjunction with other such information to assume
> the identity of another person" (Penal Law § 190.77 [1]).

Thus, while the legislature has sought to address credit card misuse, it has done so in the

context of the larger problem of the unauthorized use of personal identifying information.

III.

For the reasons that I have discussed, Penal Law § 155.30 (4) must be read as

applying to the theft of a tangible credit card and not the intangible numbers associated

with it. That should end the analysis. Nevertheless, to the extent that the statutes' language

and history are ambiguous such that we cannot decipher the legislative intent when

presented with equally logical interpretations, the rule of lenity requires that we conclude

that the trial evidence was insufficient to support defendant's conviction for credit card

theft. As the Court has explained, "if two constructions of a criminal statute are plausible,

the one more favorable to the defendant should be adopted" (*Golb*, 23 NY3d at 468,

quoting *People v Green*, 68 NY2d 151, 153 [1986]). Thus, because the prosecution failed

to sustain its burden of proof of defendant's guilt, we must vacate the conviction for grand larceny (*id.*).

The majority and I believe that the statutes are unambiguous, reaching different conclusions about how they should be read. Each side believes that the other's interpretation is erroneous. The analytical challenge is obvious: can the statutes truly be said to be unambiguous when the majority and I rely on divergent constructions of the statutes to find that they lend themselves to only one reading, even as we disagree about what that reading should be? Under our law, where the different views are in equipoise, each supported by the text and legislative history, then the statutes are ambiguous in the sense that reason does not point definitively in one direction over the other. In such cases, the rule of lenity applies.

In part, as the majority acknowledges, the rule of lenity ensures a defendant has "fair warning" of what amounts to criminal conduct and the punishment for criminal transgressions (majority op at 12). When defendant used his supervisor's credit card numbers to make unauthorized purchases, the law was unsettled as to whether he could be convicted of fourth-degree grand larceny. We identified a departmental split in *Barden,* and it remained an open question in this Court until today. In fact, the First Department in *Barden* gave credence to the reading that favors defendant here, recognizing that "the legislative history might seem to indicate that the addition of GBL 511-a in 2002 was meant to apply only to the GBL" (*Barden*, 117 AD3d at 234). The court then erroneously interpreted that history. And, of course, in *Matter of Luis C.*, the Second Department was

persuaded that this was the proper understanding of the legislature's intent. If learned

justices of the Appellate Division agree that the proposed reading of the statutes that favors

defendant has purchase, we cannot presume that the defendant knew the full range of his

criminal exposure.

Coming full circle, as I have discussed, the argument that Penal Law §§ 155.00 (7)

and 155.30 (4) require proof of theft of a tangible credit card finds support in the plain

language of the relevant provisions, New York's canons of construction, and the contested

statutes' legislative history. That may not be a unanimous view, but my interpretation of

the statutes is at least as plausible as the one adopted by the majority.

As Justice Scalia aptly explained:

> "Even if the reader does not consider the issue to be as clear as I do, [the
> reader] must at least acknowledge, I think, that it is imminently debatable—
> that is enough, under the rule of lenity, to require finding for the petitioner
> here. At the very least, it may be said that the issue is subject to some doubt.
> Under these circumstances, we adhere to the familiar rule that, where there
> is ambiguity in a criminal statute, doubts are resolved in favor of the
> defendant" (*Smith v United States*, 508 US 223, 246 [1993] [Scalia, J.,
> dissenting] [citation and internal quotation marks omitted]).

IV.

The prosecution's evidence was insufficient to establish defendant's guilt of fourth-

degree grand larceny as a matter of law, because there was no proof that he stole his

supervisor's credit card. Any inference that defendant used the credit card numbers to make

unauthorized purchases cannot be the basis for defendant's conviction because the statute

applies solely to theft of the tangible card. We need not worry that defendant and others who commit this same act will go unpunished; the legislature has criminalized unlawful possession of credit card numbers in Penal Law §§ 190.81-190.83. This Court may not rewrite the statutes at issue here at the cost of our canons of statutory interpretation and established common law rules, including the rule of lenity, to penalize a single defendant because the District Attorney failed to use these arrows in its prosecutorial quiver.

Order affirmed. Opinion by Chief Judge DiFiore. Judges Stein, Fahey, Garcia and Feinman concur. Judge Rivera dissents in part in an opinion in which Judge Wilson concurs.

Decided February 11, 2021